UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
_____x

**Case No. 23-42151 jmm**
Chapter 11

139-58 St LLC

     Debtor
_____x

## DECLARATION PURSUANT TO LOCAL BANKRUPTCY RULE 1007-4

Janet Rush, declares the following under penalties of perjury pursuant to 28 U.S.C. § 1746:

1.    I am currently the sole member and the managing member of 139-58 St LLC (the "Debtor" or "139-58"). As such, I am familiar with the operations, business and financial affairs of the Debtor.

2.    In accordance with the Local Rules, I am submitting this Declaration, to the best of my knowledge, pursuant to Local Rule 1007-4 to assist the Court, creditors and other parties- in-interest in understanding the circumstances necessitating the filing of the Chapter 11 petition, the Debtor's debt and capital structure, and the Debtors' plans to emerge from Bankruptcy.

### Events Lead-Up to the Chapter 11 Filing

3.    139-58 is the owner of certain commercial real property located at 139 58th Street, Brooklyn, NY 11220 (the "Property").

4.    The property is best described as a one-story high cube warehouse consisting of 14,500 SF, in the Sunset Park area of Brooklyn.

5.    The Debtor's sole tenant is NYC Glass Corp. ("NYC Glass") which is a fabricator of designer glass panels and other high end decorative architectural glass products. Although, NYC Glass is solely owned by me, it is and operates as a separate entity.

6.    On or around September 27, 2017, Flushing Bank ("Flushing" or the "Original Lender")

made a loan to the Debtors in the original principal amount of $3,350,000.00 (the "Loan"). The Loan was secured by a senior lien on the Property. Through a series of transfers, the Original Lender purports to have transferred the Loan to LCP NPL XI, 2019 LLC ("LCP").

7.     Until April of 2019, the Debtor was current with its loan payments.

8.     However, around that time Flushing declared the Debtor was in technical default for banking with JPMorgan Chase Bank ("Chase").

9.     It was impossible for the Debtor to switch from Chase to Flushing Bank as Flushing was not able to provide the same business services as Chase.

10.    Almost immediately after declaring the Loan in default, the Debtor's mortgage payments went from $19,350.27 to $38,700.54.  It was impossible for the Debtor to make payments in that amount and eventually the loan was sold to LCP.

11.    Around the same time, my husband who was suffering from early onset Alzheimer's disease condition deteriorated, and I assumed the management and ownership of the Debtor and NYC Glass. My husband died on May 20, 2021.

12.    The COVID-19 pandemic exasperated the Debtor's financial woes; and the Debtor was unable to emerge from being behind in its debt service.

13.    Given the Debtor's struggle to manage its debt servic the Debtor entered into negotiations with LCP to either work out or modify its obligations in order to ensure that the Debtor would be in the best position to satisfy its obligations.

14.    All of the attempts to work out a solution with LCP to resume payments on the debt were unsuccessful. As the pandemic worsened, the NYC Glass was forced to close until August 2020. Although NYC Glass opened in August 2020, there was no work, and NYC Glass eventually

furloughed all of its staff. NYC Glass was never able to recover from the effects of the pandemic and therefore has never returned to a position in which it would be able pay rent to the Debtor.

15.     Left with no other option, on November 11, 2021 the Debtor filed its first Bankruptcy Petition under Chapter case. It was anticipated that the Debtor would refinance the current loan at an interest payment that was less than the default interest rate LCP was demanding.

16.     During the brief course of that bankruptcy case discussions between counsel for the Debtor and LCP ensued.   Ultimately, the Debtor agreed to voluntarily dismiss the bankruptcy case and pursue a workout outside of bankruptcy.

17.     While the Debtor believed that it had made significant progress in these discussions, LCP seemed to have a different aim.   Unfortunately, those negotiations were fruitless, and the Debtor was left with no choice but to refile for bankruptcy protect.

18.     The Debtor believes that there is equity in the Property.   It plans to rent out to other tenants most of the space that NYC Glass currently occupies. The Debtor also plans to refinance the current loan, and is seeking to reduce the payoff amount that the current lender is demanding.

19.     The Debtor recognizes that it will not be able to unlock that potential to the benefit of all interested parties if LCP is able to proceed with a fire sale of the Property.

20.     The Debtor will attempt in good faith to work with LCP to effect a consensual plan of reorganization in this case.

**Exit Strategy**

21.     The goal of the Chapter 11 case is to pursue either (i) a restructuring that will effect either a refinancing of the Loan, or a modification of the Loan in such a way as to ensure the Property remains viable while providing LCP with a loan that will perform, or, in the alternative, (ii) a

robust sale and marketing process for the Property based on a traditional set of bidding procedures and an auction. The restructuring or sale of the Property will be conducted in conjunction with the filing of a plan of reorganization and disclosure statement.

### Local Rule 1007-4 Disclosures

22.     Pursuant to Rule 1007-4(a)(ii), 139-58 is a single asset real estate debtor.

23.     Pursuant to Rule 1007-4(a)(v), no committee has been formed prior to the commencement of this case.

24.     Pursuant to Rule 1007-4(a)(vi) of the local bankruptcy rules a list containing the names and addresses of each Debtor's twenty (20) largest unsecured creditors, excluding insiders was filed on the docket.

25.     Pursuant to Rule 1007-4(a)(vii) of the local bankruptcy rules, is a list containing the names and addresses of the Debtor's five largest secured claims was filed on the docket.

26.     Pursuant to Rule 1007-2(a)(viii), (xi), and (xii) of the local bankruptcy rules, 139-58's sole asset is the Property.   The Debtor's books and records arc located at 139 58th Street, Brooklyn, NY 11220.

27.     Pursuant to Rule 1007-2(aXix) of the local bankruptcy rules, the Debtor does not have publicly held shares, debentures, or other securities.

28.     The Debtor does not presently have any employees.

29.     The Debtor does not expect to receive revenue from operations of its business, and the principal has agreed to provide the Debtor with the capital necessary to fund the reorganization plan.

Dated June 26, 2023

By: Janet Rush