UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re:

    139-58th St LLC,

                       Debtor.

------------------------------------------------------------x

Chapter 11

Case No. 23-42151-jmm

Hon. Jil Mazer-Marino
United States Bankruptcy Judge

## LCP NPL XI, 2019 LLC'S DISCLOSURE STATEMENT
## FOR PLAN OF LIQUIDATION FOR DEBTOR

---

**THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

---

**KRISS & FEUERSTEIN LLP**
360 Lexington Avenue, Suite 1200
New York, New York 10017
(212) 661-2900
Jerold C. Feuerstein, Esq.
Daniel N. Zinman, Esq.
Stuart L. Kossar, Esq.

*Attorneys for LCP NPL XI, 2019 LLC*

The secured creditor, LCP NPL XI, 2019 LLC (the "Secured Creditor" or the "Proponent") has filed its Plan of Liquidation (the "Plan") for 139-58th St LLC (the "Debtor"),[1] the above captioned debtor and debtor-in-possessions with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court").  This Disclosure Statement for the Proponent's Plan of Liquidation for the Debtor (the "Disclosure Statement") is being submitted for the approval of the Bankruptcy Court for use in connection with the Plan filed to sell substantially all of the assets of the estate of the Debtor pursuant to Section 1125 of Title 11 of the United States Code (the "Bankruptcy Code").

A copy of the Plan accompanies this Disclosure Statement.  A glossary of terms frequently used in this Disclosure Statement is set forth in Article 1 of the Plan.

**The Proponent believes that Confirmation of the Plan is in the best interests of all the Debtor's creditors.**

### SUMMARY OF THE PLAN

The Debtor's exclusive period to file and solicit a plan expired on October 18, 2023 and December 18, 2023, respectively.  To date, the Debtor has been unable to raise sufficient financing to fund a reorganization and the Debtor and Secured Creditor have not been able to agree on a consensual Chapter 11 plan. Consequently, the next logical step was for the Proponent to file the Plan, which provides for the liquidation of the Debtor by liquidating the real property and improvements thereon, commonly known as and located at 139-143 58th Street a/k/a 140-144 57th Street, Brooklyn, NY 11220 (Section: 3, Block: 844, Lot: 23) (the "Property") and owned by the Debtor and use the proceeds from the sale to pay Claims, as more fully described below and in the Plan.

The Proponent has engaged a broker Hentze-Dor Realty, LLC (the "Broker") as its real estate advisor and it shall market and auction the Property and the Property Causes of Action (the "Sale") pursuant to 11 U.S.C. §§ 363, 1123(a)(5)(D), and 1123(b)(4) to obtain the highest and best price, in accordance with the applicable provisions of the Bankruptcy Code. The Sale shall be conducted following confirmation of the Plan, but subject to certain conditions set forth in detail herein below and in the Plan.  Bid Procedures are annexed hereto as **Exhibit "A"**. The Broker shall be retained subject to certain conditions set forth in the Broker Engagement Agreement annexed hereto as **Exhibit "B"**.

In the event that the Available Cash on the Effective Date is insufficient to provide creditors of the Debtor's estate with the distributions required to be made on the Effective Date, any shortfall will be funded by the Proponent (by either reducing the distribution to be made on account of the LCP Secured Claim as more fully described below, or through Cash to be provided the Proponent) with any such shortfall funding constituting an administrative claim against the Debtor's estates payable from Cash after the Effective Date.

---

[1] All capitalized terms not defined herein shall have the definition set forth in the Plan.

2

The table below provides a summary of the classification and treatment of Claims and Interests under the Plan. The figures set forth in the table below represents the Proponent's best estimate of the total amount of Claims and Interests filed or scheduled in this Case. These estimates have been developed by the Proponent based on its own research, the Court's Claims Register, the Debtor's Schedules and certain other documents of public record. Although the Proponent believes that the amounts of the Claims set forth below are substantially correct, there can be no assurance that Claims and Interests will be allowed by the Bankruptcy Court in the amounts set forth below:

| Class | Claim/Interest | Treatment of Claim/Interest | Estimated Amount of Allowed Claims or Interests[2] | Estimated % Distribution on Claims/Interest |
|---|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | $305,671.77[3] | 100% |
| 2 | LCP Secured Claim | Impaired | Unknown[4] | Unknown |
| 3 | Priority Claims | Unimpaired | $0[5] | 100% |

---

[2] The amounts set forth in this schedule are not and should not be deemed admissions by the Proponent as to the validity or amount of any claim and Proponent reserves all rights to object to any claim in this case. The amounts listed in this column as to claims assumes all filed claims are allowed and includes such filed claims along with scheduled claims to the extent there is not a corresponding proof of claim. Claims (other than the LCP Secured Claim) could be the subject of objections, which, if granted, would increase the estimates provided herein of recoveries to holders of Allowed Claims.

[3] As further described below, the Claims in this Class shall receive on account of such claims Available Cash sufficient to pay such Claims in full, on the Effective Date or as soon thereafter as is reasonably practicable. As per the proofs of Claim, as of the Petition Date, NYC Department of Finance has asserted a claim of $244,052.25.25 (Claim 1-1) and NYC Water Board has asserted a claim of $4,666.92 (Claim 4-1). In addition, there are unpaid real estate taxes in the amount of $32,640.48. In addition, there are 4 unscheduled claims for which no proof of claim has been filed: (i) OATH/ECB violations in the amount of $7,500 (ii) FDNY Violations in the amount of $5,295.05; (iii) Board of Health in the amount of $4,000.00; and (v) Department of Buildings in the amount of $7,517.07.

[4] As more fully described below, the Claim in this Class shall be an amount to be determined through the distribution of the net proceeds of the Sale of the Debtor's Property with after all payments to Class 1 and Class 3 Claims being paid up to payment in full, together with post-petition interest at the rate set forth in the applicable note (which includes provisions for default interest), together with fees and costs. Thus, the amount of this Secured Claim shall be determined based on the net proceeds of the Sale of the Property. As of the Petition Date, Proponent asserts a Claim of $5,068,761.98, plus protective advances, interest, costs and fees (See Claim No. 3-1).

[5] As further described below, the Claims in this Class shall receive on account of such claims from Available Cash sufficient to pay such Claims in full, on the Effective Date or as soon thereafter as is reasonably practicable.

3

| Class | Claim/Interest | Treatment of Claim/Interest | Estimated Amount of Allowed Claims or Interests[2] | Estimated % Distribution on Claims/Interest |
|---|---|---|---|---|
| 4 | General Unsecured Claims | Impaired | $500.00 | Unknown[6] |
| 5 | Interests in 139 -58th St LLC | Unimpaired | n/a | Unknown |

### CONFIRMATION OF THE PLAN

Pursuant to Section 1128 of the Bankruptcy Code, the Bankruptcy Court has scheduled a combined hearing (the "Confirmation Hearing") to consider approval of this Disclosure Statement and Confirmation of the Plan, **on March ____, 2024 at 10:00 a.m., prevailing eastern time, in the United States Bankruptcy Court for the Eastern District of New York, United States Bankruptcy Court, 271-Cadmam Plaza East, Brooklyn, New York 11201, Courtroom 3529** (although the hearing may take place remotely). The Bankruptcy Court has directed that objections, if any, to the Confirmation of the Plan be filed and served **on or before March __ , 2024 at 5:00 p.m. (prevailing eastern time)**.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129(a) of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. The Proponent intends to seek Confirmation of the Plan. **The Proponent believes that the Plan will satisfy all applicable requirements of Section 1129(a) of the Bankruptcy Code**. Confirmation makes the Plan binding upon the Debtor, its Interest Holders, all Creditors, and other parties regardless of whether they have objected to the Plan. If an impaired Class votes against the Plan, the Proponent intends on seeking confirmation under Section 1129(b) of the Bankruptcy Code, which the Proponent believes will be satisfied.

As of the Effective Date, all holders of Claims or Interests will be precluded from asserting any Claim against the Proponent, the Debtor, or the Debtor's assets or Property or other interests in the Debtor based on any transaction or other activity of any kind that occurred before the Confirmation Date except as otherwise provided in the Plan.

---

[6] Under section 4.4 of the Plan, if the Proponent is the Successful Bidder based on a credit bid, the Proponent will provide a distribution of $50.00 to holders of the General Unsecured Claims. This amount provides an approximate floor of a 10% distribution based on the estimated amount of claims in this class. The Class is also entitled to additional distributions when and if senior Classes are paid in full. There is one unsecured proof of claim filed by the Office of the United States Truste for $500.00 (claim-2-1) and there are two unsecured scheduled claims for which no proof of claims are filed: (i) John Demattia for ($0) and (ii) Shawn Bass ($0).

4

**VOTING INSTRUCTIONS AND CONFIRMATION OF PLAN**

**A. Manner of Voting on Plan**

Before voting, this Disclosure Statement as well as the Plan, should be read in its entirety. You should only use the Ballot sent to you with this Disclosure Statement, if any, to cast your vote for or against the Plan.

If you hold a Claim in Class 2, 3, and 5, included in the package of materials forwarded to you along with this Disclosure Statement and the Plan, is a ballot for your acceptance or rejection of the Plan. You should complete, date and sign your ballot and return it to Kriss & Feuerstein LLP, 360 Lexington Ave, Suite 1200, New York, New York 10017, Attn: Daniel N. Zinman, Esq. and Stuart L. Kossar, Esq., attorneys for the Proponent.  All ballots must be **received** prior to **5:00 P.M. on March ___, 2024**.  All ballots must be **received** prior to **5:00 P.M. on March ___, 2024**.  A copy of the form of the ballots are annexed hereto as **Exhibit C.**

**B. Claim Holders Entitled to Vote**

Under the Bankruptcy Code, any holders of Claims in Classes that are "impaired" under the Plan are entitled to vote to accept or reject the Plan, unless such Class neither receives nor retains any property under the Plan (in which case such Class is deemed to have rejected the Plan). Bankruptcy Code Section 1124 provides generally that a Class is impaired if the legal, equitable or contractual rights of the Claims or Interests in that Class are altered.

Subject to the exceptions provided below, any holder whose Claim is impaired under the Plan is entitled to vote if either (i) its Claim has been scheduled by the Debtor and such Claim is not scheduled as disputed, contingent or unliquidated; or (ii) such Claim holder has filed a proof of Claim which is not otherwise a Disputed Claim.

A holder of a Disputed Claim is not entitled to vote on the Plan unless such Claim is temporarily allowed by the Proponent or by an order of the Bankruptcy Court in an estimated amount which it deems proper for the purpose of voting to accept or reject the Plan.  In other words, only holders of Allowed Claims in impaired classes may vote to accept or reject the Plan. A Claim to which an objection has been filed or a Claim (i) which is listed on the Debtor's Schedules as disputed, unliquidated or contingent; and (ii) with respect to which a superseding proof of Claim has not been filed, is not an Allowed Claim for voting purposes, unless the Claim is settled by agreement, the Court allows the Claim (in whole or in part) by Final.  Upon request of a party-in-interest, the Court may temporarily allow or estimate a Disputed Claim for the purpose of voting on the Plan.  Ballots cast in respect of claims other than Allowed Claims will not be counted.  In addition, a vote may be disregarded if the Bankruptcy Court determines that the acceptance or rejection of the Plan by the Creditor is not solicited or procured in good faith, or in accordance with the provisions of the Bankruptcy Code.

4888-2516-2114, v. 5

### C. Classes Not Impaired Under the Plan

Claims by Holders in Class 1 (Other Secured Claims) and Class 3 (Priority Claims) and equity interests in Class 5 (Equity Interests) pursuant to Section 1124 of the Bankruptcy Code are unimpaired under the Plan and therefore not entitled to vote on the Plan.

### D. Classes Impaired Under the Plan

Claims by Holders in Class 2 (LCP Secured Claim,) and Class 4 (General Unsecured Creditors) are impaired under the Plan and are eligible, subject to the limitations set forth above, to vote to accept or reject the Plan. Any controversy as to whether any Claim or Class of Claims is impaired under the Plan shall, after notice of any hearing, be determined by the Bankruptcy Court.

### E. Vote Required for Class Acceptance

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a Class of impaired Claims as acceptance by at least two-thirds (2/3) in dollar amount and more than one half (1/2) in number of holders of Allowed Claims in that Class who cast ballots.

Section 1126(d) of the Bankruptcy Code defines acceptance of a plan by a class of Interest holders as acceptance by holders of at least two-thirds (2/3) in amount of the allowed interests of such class who cast ballots.

If there are no votes in a class, the Proponent intends on seeking a ruling by the Bankruptcy Court that such class will have been deemed to accept the Plan.

### NOTICE TO HOLDERS OF CLAIMS AND INTERESTS

This Disclosure Statement is being furnished by the Proponent to the Debtor's known creditors pursuant to Section 1125(b) of the Bankruptcy Code. The Plan has been filed with the Bankruptcy Court and is incorporated herein by reference. Parties in interest may view the Plan on the internet at http://www.nyeb.uscourts.gov.[7]

The purpose of this Disclosure Statement is to enable you, as a Creditor to make an informed decision in exercising your right to consider whether to object to the Plan, and, if applicable, whether to vote for or against the Plan.

The historical information concerning the Debtor has been prepared using certain filings made with the Bankruptcy Court. The estimates of Claims and Interests set forth herein may vary

---

[7] A password is necessary for access to view documents on the Internet.

from the final amounts of Claims or Interests allowed by the Bankruptcy Court. However, the Plan provides for the allowance of the Proponent's Claim in the amount of $5,068,761.98, plus interest from the Petition Date at the default rate specified in the notes underlying the Proponent's Claim and applicable fees and charges, though the amount of such claim that is a LCP Secured Claim will depend on the results of the sale process.

Notwithstanding any provision of the Plan to the contrary, definitions and descriptions contained herein respecting pre-Petition documents, agreements, or claims are provided solely for the purpose of identification and classification thereof and do not constitute an admission by the Proponent of the existence, validity, allowance, or amount of any such claim, document or agreement. The Proponent expressly reserves the right to challenge the existence, validity, allowance, or amount of any such claim, document or agreement.

This Disclosure Statement contains a summary of certain provisions of the Plan and the transactions contemplated thereunder, as well as descriptions of certain other related documents.

While the Proponent believes that these summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents. Reference is made to the Plan and the documents referred to herein and therein for a complete statement of the terms and provisions thereof. In the event of any inconsistency between the terms of the Plan and this Disclosure Statement, the terms of the Plan shall be controlling. In reviewing the Plan and this Disclosure Statement, the reader should give special attention to "RISK FACTORS." No statements or information concerning the Debtor or its assets, results of business operations or financial condition are authorized by the Proponent, other than as set forth in this Disclosure Statement, its exhibit(s) and the Plan.

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified herein. The delivery of this Disclosure Statement shall not create, under any circumstances, an implication that there has been no change in the facts set forth herein since the date hereof.

This Disclosure Statement is intended for the sole use of Creditors and Interest Holders to be informed about the Plan. Each holder of a Claim or Interest should review this Disclosure Statement, its exhibit(s) and the Plan. Holders of Claims or Interests are urged to consult with their own legal and financial advisors.

No solicitation of votes to accept or reject the Plan may be made except pursuant to this Disclosure Statement and Section 1125 of the Bankruptcy Code. No Person has been authorized to use or promulgate any information concerning the Debtor or their business or the Plan, other than the information contained in this Disclosure Statement and the exhibits hereto. You should not rely on any information relating to the Debtor or their business or the Plan other than that contained in this Disclosure Statement and the exhibits hereto.

## BACKGROUND

### THE DEBTOR AND ITS PROPERTY

The Debtor is a limited liability company that has an address of 139 58th Street, Brooklyn, NY 11220 whose business consists of ownership and operating of the Property. The Property is an industrial building that is occupied by NYC Glass Corp. ("NYC Glass"), which is controlled by the Debtor's principal, Janet Rush (the "Guarantor" or "Rush"). The Property generates substantially all of the Debtor's income, and on which Property, no substantial business is being conducted by the Debtor other than the business of operating the Property and activities incidental thereto. The Debtor remains a debtor in possession for the duration of this matter.

### THE PROPONENT & THE LOAN

#### The Loan

On September 27, 2017, the Debtor duly executed, acknowledged and delivered a Restated Mortgage Note (the "Note") to Flushing Bank ("Flushing") in the principal amount of $3,350,000.00 in connection with a commercial loan (the "Loan"). On September 27, 2017, the Debtor duly executed, acknowledged and delivered to Flushing, a Mortgage Consolidation, Modification, Extension and Security Agreement (the "Mortgage") that was recorded in the City Register of the City of New York, Kings County (the "Register's Office") on October 5, 2017 under CRFN: 2017000368976 encumbering the Property. In addition, on September 27, 2017, as further security for the Note, Guarantor, duly executed, acknowledged and delivered to Flushing a Personal Guaranty of All Liability (the "Guaranty"), individually guaranteeing all obligations under the Loan to Flushing. On September 27, 2017, as further security for the Note, Debtor, duly executed, acknowledged and delivered to Flushing an Assignments of Lease and Rents (the "ALR") which pursuant to the terms and conditions of the Loan, all rents, income, receipts, revenues, issue and profits derived from the Property were unconditionally assigned to the Secured Creditor as security for repayment of the Loan that was recorded in the Register's Office on October 5, 2019 under CRFN: 2017000368977. On September 27, 2017, Flushing duly perfected its security interest pursuant to a UCC-1 Financing Statement (the "UCC-1 Financing Statement" and together with the Note, Mortgage, Guaranty and ALR, collectively, the "Loan Documents") that was recorded in the Register's Office on October 5, 2019 under CRFN: 2017000368978.

#### The Assignment to Secured Creditor

On August 29, 2019, Flushing assigned the Note and Mortgage to Secured Creditor pursuant to an Assignment of Mortgage (the "Assignment of Mortgage"), which was recorded in the Register's Office on September 24, 2019 under CRFN: 2019000308964. The Note was endorsed to the Secured Creditor as evidenced by the allonge (the "Allonge"). On August 29, 2019, Flushing assigned the ALR to Secured Creditor pursuant to an Assignment of Assignment of Leases and Rents (the "ALR Assignment"), which was recorded in the Register's Office on September 24, 2019 under CRFN: 2019000308965. Further, On August 29, 2019, Flushing

8

assigned the UCC-1 Financing Statement to Secured Creditor pursuant to an UCC-3 Assignment (the "UCC Assignment"), which was recorded in the Register's Office on September 24, 2019 under CRFN: 2019000307675.

## THE DEFAULT AND FORECLOSURE ACTION

The Debtor defaulted under the Loan Documents by failing (amongst other things) to remit the payment due on May 1, 2019 (the "Default") and each payment thereafter.

As a result of the Default, pursuant to the terms of the Loan Documents, Flushing declared the balance of the principal indebtedness immediately due and payable and commenced a mortgage foreclosure action (the "Foreclosure Action") in the Supreme Court of the State of New York, County of Kings (the "State Court") under Index No. 5514848/2019 in the matter originally styled *Flushing Bank v. 139-58th St LLC, et al*. by filing a Summons. The Summons and Complaint (the "Complaint") were filed with the Kings County Clerk on July 8, 2019. The Debtor, Guarantor and NYC Glass were named as Defendants in the Foreclosure Action and defaulted.

By order entered on October 7, 2020, the State Court granted the Receiver Application (the "Receiver Order") and appointed Barton Schwartz as Receiver (the "Receiver"). On September 1, 2020, the Receiver issued a Demand for Compliance (the "Demand for Compliance") upon the Debtor, directing, *inter alia*,  leases, agreements, be provided to the Receiver and to cease the collection of rent from the Property. In addition, on September 1, 2020, Receiver served a Notice to Attorn (the "Notice to Attorn") upon the Debtor, NYC Glass and all other interested parties that pursuant to the Receivership Order, all rents are to be paid to the Receiver. On November 8, 2020, the State Court entered orders granting the Receiver's request to retain a Property manager, a real estate broker, and counsel to enforce the Debtor's non-compliance with the Receivership Order in the Foreclosure Action.

## THE DEBTOR'S FIRST BANKRUPTCY FILING

On November 11, 2021, the Debtor filed its first petition (the "First Petition") for Chapter 11 bankruptcy relief in the Bankruptcy Court under case no. 21-42840-jmm (the "First Bankruptcy Case"), staying the Receiver's actions to manage the Property. [First Bankruptcy Case ECF No. 1].[8] On March 11, 2022, the Office of the United States Trustee (the "UST") filed a Motion (the "Conversion Motion') seeking to convert the Bankruptcy Case to Chapter 7 of the Bankruptcy Code or (alternatively) dismiss the Bankruptcy Case because: (i) the Debtor failed to file provide proof of operating a debtor-in-possession account; (ii) file monthly operating reports; and (iii) timely pay UST quarterly fees [First Bankruptcy Case ECF No. 22]. On April 14, 2022, the Bankruptcy Court entered and order dismissing the First Bankruptcy Case [First Bankruptcy Case ECF No. 33].

---

[8] "First Bankruptcy Case ECF No." shall refer to the docket entry in the First Bankruptcy Case.

**EVENTS FOLLOWING THE FIRST BANKRUPTCY CASE**

On August 4, 2022, the State Court entered an order (the "Order of Reference") granting Secured Creditor's application for a default judgment against all defendants and appointing a referee to compute the amount due under the Note and Mortgage. On September 11, 2022, the Receiver filed an application (the "Contempt Application") to find Debtor, Guarantor, and NYC Glass and all other interest parties in contempt for failure to comply with the Receivership Order. On January 26, 2023, the State Court entered an order granting the Contempt Application (the "Contempt Order") and directed the Receiver to settle a proposed order upon notice Debtor and NYC Glass. On January 27, 2023, the State Court entered an order granting Plaintiff's Motion for a Judgment of Foreclosure and Sale (the "JFS"). Pursuant to the JFS, Secured Creditor scheduled a sale of the Property (the "Foreclosure Sale") for June 22, 2023.

**SIGNIFICANT POST-PETITION EVENTS IN THIS CHAPTER 11 CASE**

**THE PETITION AND SCHEDULES**

On June 20, 2023, the Debtor filed its second petition (the "Petition") for Chapter 11 bankruptcy relief in the Bankruptcy Court under case no. 23-42151-jmm (the "Bankruptcy Case"), staying the Foreclosure Sale. The Debtor is designated as single asset real estate pursuant to 11 U.S.C. § 101(51B) [ECF No. 1]. On June 20, 2023, this Court entered an order directing the Debtor (among other things) to file an affidavit pursuant to Rule 1007-4 of E.D.N.Y. Local Bankruptcy Rules (the "Local Rules"), a corporate resolution pursuant to Local Rule 1074-1, a corporate disclosure statement pursuant to Local Rule 1073-3 [ECF No. 3]. Debtor, in its Schedules (including Amended Schedules), identifies one secured creditor, three priority unsecured creditors, and two nonpriority unsecured creditors.  To date, two creditors have filed proofs of claim.  A summary of the status of claims are provided below.

| SUMMARY AND STATUS OF CLAIMS | | | | |
|---|---|---|---|---|
| Type of Claim | Claimant | Claim No. & Claim Amount | Schedule No. & Scheduled Amount | Not scheduled |
| Other Secured | NYC Department of Finance | 1-1 ($244,052.25) | 2.2 (unknown) | |
| Other Secured | NYC Water Board | 4-1 ($4,666.92) | | |
| Other Secured | OATH/NYC ECB | | | $7,500.00 |
| Other Secured | FDNY Violations | | | $5,295.05 |
| Other Secured | Board of Health | | | $4,000.00 |
| Other Secured | Department of Buildings | | | $10,017.07 |

| Secured | LCP NPL XI, 2019 LLC | 3.1 ($5,068,761.98) | 2.1 ($4,920,000.00) | |
| Priority | IRS | | 2.2 (Unknown) | |
| Priority | NYS Department of Tax & Finance | | 2.3 (Unknown) | |
| Unsecured | Office of the United States Trustee | 2.1 ($500) | | |
| Unsecured | John Demattia | | 7.2 (listed as litigation in Statement of Financial Affairs) | |
| Unsecured | Shawn Bass | | 7.3 (listed as litigation in Statement of Financial Affairs) | |
| | | | | |

A Section 341 Meeting of Creditors was held on July 21, 2023 [ECF No. 11].

**RETENTION OF DEBTOR'S COUNSEL**

As of the date hereof, the Law Office of Charles Wertman has appeared on behalf of the Debtor but there is no retention application filed.

**OPERATING REPORTS**

As of the date hereof, the Debtor has not filed any monthly operating reports.

**BAR DATE**

In accordance with the requirements of Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, the Debtor filed its Schedules of assets and liabilities, including schedules of all of its known creditors and the amounts and priorities of the Claims the Debtor believe are owed to such creditors. On October 22, 2023, the Bankruptcy Court signed an order setting December 19, 2023, as the Date for parties to file proofs of claim.

The Plan provides that the Proponent may file and serve any objection to any Claim or Interest at any time, but in no event after the Effective Date for Claims that are otherwise entitled to payment on the Effective Date or, for all Claims that are otherwise entitled to payment after the Effective Date, the later to occur of (i) ninety (90) days following the Effective Date; or (ii) sixty (60) days after the date proof of such Claim or Interest or a request for payment of such Claim is filed with the Bankruptcy Court, unless the time is extended by the Bankruptcy Court.

4888-2516-2114, v. 5

## THE EXPIRATION OF THE EXCLUSIVE PERIOD

The Debtor's exclusive periods to file and solicit acceptances to a chapter 11 plan were October 18, 2023. To date, the Debtor has not sought to solicit acceptances or sought any further extensions of the exclusive periods. Accordingly, the Debtor's exclusive periods to file and solicit a chapter 11 plan have expired.

### Summary of the Plan

The following summary of the terms of the Plan is qualified in its entirety by reference to the provisions of the Plan, a copy of which accompanies this Disclosure Statement, and which is incorporated herein by reference.

The Proponent submits that the treatment of Creditors under the Plan is the same or better than the treatment Creditors would receive if the Chapter 11 Case were converted to a Chapter 7. Therefore, the Proponent submits that the Plan is in the best interests of the Creditors and the Proponent recommends acceptance of the Plan by holders of Claims in all Classes.

## THE PROPOSED SALE

The Plan provides for the liquidation of the Debtor by selling the Debtor's only material asset, the Property, to generate proceeds to pay Allowed Claims of the Debtor's estates as more fully described herein and in the Plan.

The Proponent intends to sell the Property (and the Property Causes of Action) to obtain its highest and best price, in accordance with applicable provisions of the Bankruptcy Code.  The closing of the Sale shall take place following the Auction in accordance with the Bid Procedures. In summary, the Broker will market the Property (and the Property Causes of Action) and conduct an Auction following confirmation at which the Proponent will be entitled, within its discretion, to submit a credit bid in the Allowed amount of the LCP Claim.  The Closing shall take place after the Auction.

The winning bidder at the auction (the "Successful Bidder") shall take title to the Property (and the Property Causes of Action) free and clear of all liens, claims and encumbrances pursuant to Sections 363(f) and 1123(a)(5) of the Bankruptcy Code, except that at the Successful Bidder's discretion, the Successful Bidder may take the Property subject to the Proponent's mortgage, which may be assigned to a lender to the Successful Bidder.

In the event that the Available Cash on the Effective Date is insufficient to provide creditors of the Debtor's estates with the distributions required to be made on the Effective Date, any shortfall will be funded by the Proponent by either reducing the distribution to be made on account of the LCP Secured Claim in Class 2, or through Cash to be provided by the Proponent with any

12

such shortfall funding constituting an administrative claim against the Debtor's estates payable from Available Cash after the Effective Date.

Upon completion of the Sale, Kriss & Feuerstein LLP, the Proponent's Disbursing Agent, shall be authorized to execute any and all documents necessary to effectuate the conveyance of the Property (and the Property Causes of Action) in accordance with the terms of the Plan, including without limitation, Bargain and Sale Deed with Covenants, a Bill of Sale and all required transfer tax returns and ACRIS documents. Furthermore, on the Effective Date, the Debtor will provide the Successful Bidder, or its nominee, with an assignment and assumption of all unexpired leases or executory contracts that are subject of an Assumption Notice at the Property.

## The Broker[9]

As set forth herein, Hentze-Dor Realty, LLC is well experienced with sales of real estate like the Property having an active commercial real estate company for the past 40 years specializing in the sales and leasing of industrial and commercial real estate throughout Brooklyn and Queens. The Broker is well experienced with sales of real estate like the Property and represented some several hundred commercial and institutional transactions since its inception. It has been responsible for the sale of over 200 properties. In addition, the Broker has a dedicated staff experiences to marketing properties similar to the Property.

Pursuant to the Broker Engagement Agreement, the Broker will use its commercially reasonable efforts to obtain a satisfactory purchaser for the Property on such terms as are acceptable to the Proponent. The Broker will negotiate the business terms of each purchase and sale agreement on behalf of the Proponent, subject to the Proponent's review and approval. The Broker's Engagement Agreement lists the scope of the assignment and the compensation. If the Property is sold to the Proponent (or its nominee) Broker shall not receive any commissions or costs. In addition, the Broker shall be paid 4.0% of the sale price if it is sold to any other person (See Broker Engagement Agreement, at ¶ 3).

## Classification of Claims and Interests

Classification of claims is governed, in part, by Sections 1122 and 1123(a) of the Bankruptcy Code. 11 U.S.C. § 1123(a) requires that a plan designate classes of claims, requires that the plan specify the treatment of any impaired class of claims, and requires that the plan provide the same treatment for each claim of a particular class, unless the holder of a claim receiving less favorable treatment consents to such treatment. 11 U.S.C. § 1123(a)(1), (3) and (4). 11 U.S.C. § 1122(a) of the Bankruptcy Code provides, subject to an exception for administrative convenience, that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."

---

[9] The background information relating to the Broker is based on the Broker's website of the filing of the Disclosure Statement. More information on the Broker can be found on its website (http://www.hentze-dor.com)

Article 3 of the Plan classifies the various Claims against and Interests in the Debtor into four (4) classes of Claims and one (1) class of Interests:

| | | |
|---|---|---|
| **Class 1** | - | **Other Secured Claims** |
| **Class 2** | - | **LCP Secured Claim** |
| **Class 3** | - | **Priority Claims** |
| **Class 4** | - | **General Unsecured Claims** |
| **Class 5** | - | **Interests in Debtor** |

As discussed above, Class 1, Class 4, Class 5 are unimpaired under the Plan and holders of claims or interests in such Classes are conclusively deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code and no voting or balloting will be conducted of the creditors or interest holders in such Classes under the Plan.  Classes 2, and 5 are impaired under the Plan and holders of claims or interests in such classes will receive a ballot to vote on the Plan. As set forth in Article 2 of the Plan, pursuant to Section 1123(a)(1) of the Bankruptcy Code, certain Administrative Claims against the Debtor have not been classified.  See "SUMMARY OF THE PLAN -- Treatment of Non-Classified Claims."

**Class 1 –Other Secured Claims.**  Class 1 consists of all Other Secured Claims against Debtor (*i.e.*, other than the Secured Claims of Proponent).  The Other Secured Claims in Class 1 are not impaired under the Plan.

**Class 2** – **LCP Secured Claim**.  Class 2 consists of the LCP Claim, which comprises the secured portion of the LCP Claim, which is secured by a first priority security interest in the Property.  The Plan allows the LCP Claim at \$5,068,761.98  as of the Petition Date, plus default interest, fees and costs after the Petition Date.  The amount of the LCP Secured Claim shall be determined based on the extent to which the LCP Claim is secured by an interest in the Property, which shall be determined by the amount of net proceeds received from the Sale of the Property.  To the extent that the LCP Claim is not secured by an interest in the Property (which shall be determined by the proceeds received from the Sale of the Property), the resulting unsecured portion of the LCP Claim shall constitute the LCP Unsecured Claim, a claim in Class 4. The LCP Secured Claim is impaired under the Plan.

**Class 3 –Priority Claims**.   Class 3 consists of all Priority Claims against the Estate.  The Priority Claims in Class 3 are unimpaired under the Plan.

**Class 4 –General Unsecured Claims**.  Class 4 consists of all General Unsecured Claims against Debtor. The General Unsecured Claims in Class 4 are impaired under the Plan.

**Class 5 – Interests.** Class 5 consists of all Equity Interests in the Debtor. he Interests in Class 5 are unimpaired under this Plan.

**TREATMENT OF CLAIMS AND INTERESTS CLASSIFIED UNDER THE PLAN**

Article 4 of the Plan provides for the treatment of Claims classified in Article 3 of the Plan as follows:

**Class 1 –Other Secured Claims.** The holders of the Allowed Class 1 Other Secured Claims will receive on account of such claims Available Cash sufficient to pay such Claims in full, on the Effective Date or as soon thereafter as is reasonably practicable.

**Class 2** – **LCP Secured Claim**. The holder of the Allowed Class 2 LCP Secured Claim will receive on account of such claim on or about the Effective Date either a distribution of Available Cash sufficient to allow for payment in full of the LCP Secured Claim or the Property and the Property Causes of Action following a successful credit bid; provided, however, that such payment shall be reduced pursuant to section 6.2 hereof to the extent required to allow for payment in full on the Effective Date of the Claims in Class 1, Class 3 Claim, the Statutory Fees and Administrative Claims and any other payments required to be made under the Plan.

**Class 3 – Priority Claims**. Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, and with the exception of holders of Priority Claims who waive any distribution under the Plan on account of their Class 3 Priority Claims against the Debtor, each holder of an Allowed Class 3 Priority Claim will receive on or about the Effective Date on account of such claim payment in full from Available Cash.

**Class 4 – General Unsecured Claims**. Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, and with the exception of holders of General Unsecured Claims who waive any distribution under the Plan on account of their Class 4 General Unsecured Claims, each holder of an Allowed Class 4 General Unsecured Claim will receive on account of such claim payment pro rata distribution of Available Cash after all payments to Class 1 Claims, the Class 2 Claim, the Class 3 Claim, the Statutory Fees and Administrative Claims, with simple interest at the Federal Judgment Rate per annum from the Petition Date, with principal being paid in full prior to any payments being made on account of such interest; provided, however, that if the Proponent is the Successful Bidder based on a credit bid, the Proponent will provide a distribution of $50.00 to holders of Claims in Class 4 other than the LCP Unsecured Claim, the Proponent agreeing to waive the right to receive any distribution from such $50.00 as a member of this Class.

**Class 5 – Interests**. Holders of Allowed Class 5 Interests shall continue to retain and maintain such Interests in the Debtor and the Post-Confirmation Debtor following the Effective Date of the Plan in the same percentages as existed as of the Petition Date. Additionally, to the extent that there is any Available Cash after full payment of all Statutory Fees, Administrative Claims, the Class 1 Claims, the Class 2 Claim, the Class 3 Claims, the Class 4

Claims, the holders of the Allowed Class 5 Interests shall receive such remaining Available Cash, pro rata, in accordance with their respective percentage interests in the Debtor.

### TREATMENT OF NON-CLASSIFIED CLAIMS

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims entitled to priority treatment under Section 507(a)(2) of the Bankruptcy Code or Claims of Governmental Units entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code. Article 2 of the Plan provides for the manner of treatment of such non-classified Claims.

**Administrative Claims.** Administrative Claims are the costs and expenses of administration of this Case, allowable under Section 503(b) of the Bankruptcy Code, other than Bankruptcy Fees. Administrative Claims include Claims for the provision of goods and service to the Debtor after the Petition Date, the liabilities incurred in the ordinary course of the Debtor's business (other than claims of governmental units for taxes or interest or penalties related to such taxes) after the Petition Date, Claims of professionals, such as attorneys, brokers, appraisers, and accountants, retained pursuant to an order of the Bankruptcy Court, for compensation and reimbursement of expenses under Section 330 of the Bankruptcy Code, and tax claims for the period from the Petition Date to the Effective Date of the Plan.

Each holder of an Allowed Administrative Claim shall receive cash in the full amount of its Administrative Claim. The Proponent estimates that the total amount of professional fees and expenses for its counsel will total approximately $15,000.00 through the Effective Date of the Plan. The Proponent does not necessarily agree that that amount will be allowed and reserves all rights to object to any fee applications. It is not believed that there will be any other Administrative Claims in this case (aside from the Broker's commission, which shall be paid via a buyer's premium).

Each Administrative Claim, shall be paid by the Disbursing Agent in Cash in full on (i) the later of the Effective Date, the date payment of such Claim is due under the terms thereof or applicable law, or three business days after such Claim becomes an Allowed Administrative Claim, or (ii) as may be otherwise mutually agreed in writing between the Disbursing Agent and the holder of such Claim, provided, however, that any Allowed Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim and any agreements relating thereto.

Article 2 of the Plan sets a final date for the filing of Administrative Claims against the Debtor. The Administrative Bar Date is fourteen (14) days after entry of the Confirmation Order.

**Bankruptcy Fees.** All fees and charges assessed against the Debtor of its Estate under Section 1930 of title 28 of the United States Code and any applicable interest thereon shall be paid by the Disbursing Agent in Cash in full as required by statute, and until the closing, conversion or

dismissal of this case, whichever is earlier. The Disbursing Agent shall continue to be responsible for the payment of any such fees and charges. It is estimated that Bankruptcy Fees and charges will be approximately $0, as it is estimated that the sale of the Property will not generate interest above the Proponent's credit bid, or such greater sum as necessary to satisfy the Office of the United States Trustee.

**Professional Fees.** 11 U.S.C. § 330 of the Bankruptcy Code sets the standard for the determination by the Bankruptcy Court of the appropriateness of fees to be awarded to Professionals retained by the Debtor in a case under the Bankruptcy Code. In general, bankruptcy legal services are entitled to command the same competency of counsel as other cases. "In that light, the policy of this section is to compensate attorneys and other professionals serving in a case under title 11 at the same rate as the attorney or other professional would be compensated for performing comparable service other than in a case under title 11." 124 Cong. Rec. H11091 (Daily ed. Sept. 28, 1978).

Reasonable compensation due to the Debtor's retained professionals pursuant to Section 330 of the Bankruptcy Code, as determined by the Bankruptcy Court, shall be payable in full and in Cash on the Effective Date unless otherwise agreed to in writing between the holder of such claim and the Debtor and approved by the Bankruptcy Court.

## DISPUTED CLAIMS

Article 8 of the Plan contains a mechanism for resolving disputes concerning the amount of certain Claims asserted against the Debtor's by any Entity.

**Time to Object.** Proponent, shall have authority to file, prosecute, settle, compromise, withdraw or resolve objections to Claims as they see fit in its discretion. The rights of anyone who has objected to such Claim(s) prior to the Effective Date as to such objection shall be transferred to the Proponent after the Effective Date. Unless otherwise ordered by the Bankruptcy Court or provided in this Plan, the Proponent may file and serve any objection to any Claim or Interest at any time, but in no event after the Effective Date for Claims that are otherwise entitled to payment on the Effective Date or, for all Claims that are otherwise entitled to payment after the Effective Date, the later to occur of (i) ninety (90) days following the Effective Date; or (ii) sixty (60) days after the date proof of such Claim or Interest or a request for payment of such Claim is filed with the Bankruptcy Court, unless the time is extended by the Bankruptcy Court.

## DISTRIBUTIONS UNDER THE PLAN

Article 8 contains provisions governing the making of Distributions on account of Claims and Interests. In general, except as otherwise provided in the Plan, and subject to Sections 8.7, 8.8 and 8.9 of the Plan, any payments, distributions or other performance to be made pursuant to this Plan on account of any Disputed Claim shall be deemed to be timely made if made on or within five (5) days following the later of (i) the Effective Date, (ii) the expiration of any applicable objection deadline with respect to such Disputed Claim, or (iii) such other times provided in this

Plan. All Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank. Any escrowed, reserved or segregated funds will be held at a banking institution that is an authorized banking depository in the Eastern District of New York.

**Disbursing Agent.** Kriss & Feuerstein LLP will act as the Disbursing Agent in order to make Distributions under the Plan for all claims against the Debtor's Estate. The Disbursing Agent shall not be compensated for services rendered under the Plan and shall not be required to secure a bond. The Disbursing Agent shall not incur any liability, other than for gross negligence, willful misconduct, criminal conduct, or for any claim for liability pursuant to 28 U.S.C. § 959 in connection with carrying out its duties under the Plan, which liability shall be expressly limited to the period commencing from the date of the Disbursing Agent's receipt of the Available Cash and ending on the date that all disbursements contemplated by the Plan have been distributed.

Distributions shall be made: (1) at the addresses set forth on the Proofs of Claim or Proofs of Interests filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim or Proof of Interest; or (3) at the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Disbursing Agent has not received a written notice of a change of address.

UNCLAIMED DISTRIBUTIONS

Any distribution that is returned to the Disbursing Agent shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution (each, an "Unclaimed Distribution"). A distribution becomes an Unclaimed Distribution if three months have elapsed since a distribution is returned to the Disbursing Agent as undeliverable or six months have elapsed since a distribution check has gone uncashed and if no notice has been provided to the Disbursing Agent by the holder of the claim to which such distribution relates containing a valid address for such holder. If such a notice is provided, then, after receipt of such additional information as the Disbursing Agent may require confirming the identity, address and ownership of such Claim, the Disbursing Agent shall make a distribution of all amounts reserved for such undeliverable distribution or unclaimed check to such Claim holder at the address provided in such notice within 14 days thereafter. All Unclaimed Distributions shall become Available Cash and shall be distributed in accordance with this Plan.

DISTRIBUTIONS WITH RESPECT TO DISPUTED CLAIMS

During the pendency of any objection to any Claim, no Distribution under the Plan will be made to the holder of such Claim. However, there will be set aside and reserved on behalf of such disputed Claim such cash or property as the holder thereof would be entitled to receive in the event such Claim was an Allowed Claim on the date of such Distribution. The Proponent may seek an order of the Bankruptcy Court estimating or limiting the amount of Cash or property that must be deposited in respect of any such Disputed Claims. Cash held in reserve for Disputed Claims will be held in trust for the benefit of the holders of such Claims.

18

## SURRENDER OF INSTRUMENTS

No Creditor that holds a note or other instrument of the Debtor's evidencing such Creditor's Claim may receive any distribution with respect to such Claim or Interest unless and until the note or other instrument evidencing such Claim is surrendered pursuant to the provisions of the Plan, except the mortgages of Debtor held by LCP to the extent it is assigned to the Successful Bidder's lender.  In the event an instrument evidencing a claim has been lost, stolen or mutilated, the Disbursing Agent may request reasonable affidavits and indemnification by a financially responsible party before making any distribution(s) to such Creditor.

## COMPLIANCE WITH TAX REQUIREMENTS

In connection with the Plan, the Debtor shall not be relieved of, and shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and distributions under the Plan shall be subject to such withholding and reporting requirements.

## EFFECTIVE DATE

The Effective Date of the Plan is defined as the later of (i) one Business Day after the Confirmation Order becomes a Final Order; or (ii) the date all conditions to the Effective Date have been satisfied or waived by the entity entitled by this Plan to waive such condition and the Sale has closed.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

All Executory Contracts or Unexpired Leases to which the Debtor is a party as of the Effective Date, other than residential leases, which were not previously rejected, assumed, or assumed and assigned by the Debtor shall be rejected and disaffirmed under the Plan as of the Effective Date in accordance with the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code, unless an Executory Contract or Lease is listed as assumed and assigned to a Successful Bidder on a notice to be filed by the Successful Bidder with the Bankruptcy Court (the "**Assumption Notice**"), with such notice being served by the Successful Bidder on the counterparty to each such Executory Contract or Unexpired Lease, no later than fourteen (14) days prior to the Effective Date.

**Rejection Claims**.  Holders of Claims created by the rejection of executory contracts and unexpired leases or the expiration or termination of any executory contract or unexpired lease must file in the Bankruptcy Court and serve on the Proponent a proof of claim within 21 days after service of the Assumption Notice or the expiration of the deadline to serve the Assumption Notice. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan as against the applicable Debtor, subject to objection by the Proponent.  After receipt of such proof of claim, the

19

Proponent shall have 14 days to file an objection, failing which such Claim shall be an Allowed Claim.

## TRANSFER OF THE PROPERTY

Except as otherwise provided in the Plan, on Effective Date, all of the assets and Property of the Debtor's Estate shall vest in the Disbursing Agent or, as to the Property, the Successful Bidder, free and clear of all Liens, Claims and encumbrances (except to the extent such Property is sold subject to the Proponent's lien). The Debtor shall cooperate with the execution of any and all documents needed to facilitate all transfers pursuant to the Plan, including the Property. On the Effective Date, any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date. Furthermore, on the Effective Date or as soon as practicable thereafter, all insurance claims and proceeds thereof to which the Debtor was entitled, shall be assigned to the Disbursing Agent for liquidation and distribution in accordance with the Plan.

## TERMINATION OF RECEIVERSHIP

On the Effective Date, the Receiver shall transfer to the Disbursing Agent the Receivership Funds. After such transfer, the Receiver shall be terminated and have no further duties and/or responsibilities with respect to the management and/or preservation of the Property. As soon as practicable on or after the Effective Date, the Receiver shall turnover all books and records related to the Property and the Property Causes of Action, including copies of all leases executed by the Receiver with respect to the Property and the Property Causes of Action to the Proponent or to the Successful Bidder as directed by the Proponent. The Receiver's managing agent, if any, shall cooperate in all respects and shall also be relieved as managing agent on the Effective Date. The Receiver shall as promptly as practicable, file final accountings and requests for fees and commissions with the Bankruptcy Court. The Confirmation Order shall provide for termination of the Receivership and the Receiver can file the Confirmation Order in the Foreclosure Action to obtain a discharge of the Receiver's bond.

## FUNDING

The Plan will be funded by monies made available from the Sale of the Property (and the Property Causes of Action). However, the Proponent shall advance such funds as are necessary to make payments required under the Plan if the Sale proceeds are insufficient to fund all payments required under the Plan, as provided in section 6.2 of the Plan.

The Disbursing Agent shall take all necessary steps and perform all acts to consummate the terms and conditions for the Plan, and the Debtor shall not interfere with the Disbursing Agent in the performance of its duties. The Confirmation Order shall contain appropriate provisions consistent with Section 1142 of the Bankruptcy Code, directing the Debtor and any other necessary party to execute or deliver or to join in the extension or delivery of any instrument required to affect the Plan or to perform any act necessary to consummate the Plan.

20

Except as set forth elsewhere in the Plan, all payments required to be made under the Plan shall be made by the Disbursing Agent for disbursement in accordance with the terms of the Plan.

## PRESERVATION OF RIGHTS OF ACTION

On the Effective Date: (a) all Causes of Action shall be transferred to the Successful Bidder, except for the Property Causes of Action, which shall be transferred to Successful Bidder; and (b) all Privileges (including attorney-client and attorney work product) and all rights under any confidentiality agreements owned by the Debtor on the Effective Date that relate to the Property Causes of Action shall be transferred to the Successful Bidder. The Successful Bidder shall have the right to enforce or waive such Privileges and rights as it sees fit in its discretion except as to any Privileges and any rights under any confidentiality agreements that relate to the Property Causes of Action, which shall be transferred to the Successful Bidder and the Successful Bidder shall have the right to enforce or waive such Privileges and rights as they see fit in their discretion. All other Causes of Action are waived. No Causes of Action have been asserted by or on behalf of the Debtor against the Proponent, nor have any other Causes of Action been asserted against the Proponent by third parties in connection with the Debtor and the Property. The Proponent is not aware that any such Causes of Action against the Proponent exist.

## POST-CONFIRMATION OPERATING REPORTS AND UNITED STATES TRUSTEE'S FEES

The Debtor's duty to prepare and file post-confirmation monthly operating reports shall continue until the closing of this case by means of a final decree, dismissal or conversion of this case, whichever is earlier. Within 10 days of the Effective Date or as soon as practicable thereafter, the Disbursing agent shall file a closing report detailing all disbursements made at the closing on the Property. All outstanding quarterly fees and any applicable interest due thereon payable to the Office of the United States Trustee shall be paid by the Disbursing Agent until entry of a final decree, conversion or dismissal, whichever is earlier.

## TRANSFER TAXES

Pursuant to Section 1146(a) of the Bankruptcy Code, the initial issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan (including any instrument executed in furtherance of the transactions contemplated by the Plan including but not limited to the deed conveying the Property in accordance with the Sale and any deed further conveying the Property with two years following the Sale by the Successful Bidder or its affiliate or designee) shall be exempt and shall not be subject to tax under any law imposing a Transfer Tax, mortgage recording tax or similar tax as set forth in the Plan. In connection therewith, the Successful Bidder shall have the protections afforded under the "good faith" purchaser provisions of Section 363(m) of the Bankruptcy Code and all stay provisions under Bankruptcy Rule 6004(h) or elsewhere will be waived.

### REVOCATION OF THE PLAN

The Plan may be altered, amended, modified or withdrawn by the Proponent at any time before Substantial Consummation of the Plan, as provided in Sections 1101(2)(A) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.  Section 1127 of the Bankruptcy Code authorizes the proponent of a plan of reorganization to modify such plan at any time prior to confirmation of the plan so long as the plan, as modified, continues to meet certain technical requirements of Sections 1122 and 1123 of the Bankruptcy Code with respect to the classification of Claims and Interests and the contents of a plan.  Prior to Confirmation, if the Proponent files a modification to the Plan, pursuant to Section 1127(a) "the plan as modified becomes the plan."  No order of the Court is required to modify the Plan under the terms of Section 1127(a); however, the proponent of a modification to a plan must comply with Section 1125 of the Bankruptcy Code with respect to the plan as modified.

The Proponent may revoke or withdraw the Plan at any time prior to Substantial Consummation of the Plan.  If the Proponent revokes or withdraws the Plan, or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall constitute a waiver or release of any Claims by or against, or any Interest in the Debtor in any further proceedings involving the Debtor.

### RETENTION OF JURISDICTION

The Plan contains detailed provisions providing for the retention of jurisdiction by the Bankruptcy Court over the Case for the purposes of, *inter alia,* determining all disputes relating to Claims or Interests and other issues presented by or arising under the interpretation, implementation or enforcement of the Plan.

### RISK FACTORS

Plan payments are to be made from the Sale proceeds and, if necessary, the funds provided by the Proponent if there is a shortfall of the amounts necessary to make the Plan Effective as provided in section 6.2 of the Plan. There can be no assurance that the Sale of the Property will occur.

## CONFIRMATION OF THE PLAN

All Distributions to holders of Allowed Claims are contingent on the Plan being confirmed by this Court.  Otherwise, neither the Disbursing Agent nor the Proponent is obligated to make the payments required hereunder.

### CONFIRMATION HEARING

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider confirmation of the Plan. **The Confirmation Hearing is scheduled to commence on**

**March __, 2024 at 10:00 a.m., prevailing eastern time, in the United States Bankruptcy Court for the Eastern District of New York, United States Bankruptcy Court, 271-Cadman Plaza East, Brooklyn, New York 11201, Courtroom 3529** (although the hearing may be conducted remotely due to COVID)**.**  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing.  Due to the COVID epidemic and related concerns, the Confirmation Hearing may be conducted telephonically or by video conference.  Please check with the website for the Bankruptcy Court to obtain more details: https://www.nyeb.uscourts.gov/content/judge-jil-mazer-marino.

The Bankruptcy Court has directed **that objections, if any, to confirmation of the Plan be filed and served on or before March_____, 2024 at 5:00 p.m.**  Objections must be served upon (i) Counsel to the Proponent, Kriss & Feuerstein LLP., 360 Lexington Avenue, Suite 1200, New York, New York, New York 10017 – Attn:  Jerold C. Feuerstein, Esq., Daniel N. Zinman, Esq. & Stuart L. Kossar, Esq. (ii) Counsel to the Debtor, The Law Offices of Charles Wertman, 100 Merrick Road, Suite 304W, Rockville Centre, NY 11570, attn: Charles Wertman, Esq. (iii) The Office of the United States Trustee, Alexander Hamilton Custom House, One Bowling Green, Room 510, New York, NY 10004-1408, and be filed electronically in accordance with the Court's ECF procedures.

## REQUIREMENTS FOR CONFIRMATION

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. These requirements include determinations by the Bankruptcy Court that: (i) the Plan has classified Claims and Interests in a permissible manner, (ii) the contents of the Plan comply with various technical requirements of the Bankruptcy Code, (iii) the Proponent has proposed the Plan in good faith, (iv) the Proponent has made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan and the Case, (v) the Plan is in the "best interests" of all Creditors and Interest Holders; and (vi) the Plan is feasible.  The Proponent believes that all of these conditions have been or will be met prior to the Confirmation Hearing.

**Best Interest Test.**  The so-called "best interest" test requires that each impaired Creditor and impaired Interest Holder either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such entity would receive or retain if the Debtor were to be liquidated under chapter 7 of the Bankruptcy Code.

To determine what the holders in each Class of Claims or Interest would receive if the Debtor were liquidated under Chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets in a chapter 7 liquidation case. The amount that would be available for satisfaction of Allowed Claims against and Allowed Interests in the Debtor would consist of the proceeds resulting from the disposition of the Debtor's assets, augmented by the cash held by the Debtor.  Such amount would be reduced by the amount

of any Claim or Claims secured by the Debtor's assets, the costs and expenses of the liquidation, and such additional Administrative Claims and Priority Claims that may result from the termination of the Debtor's business. Such value is then juxtaposed against the amount creditors are receiving under the Plan to determine if the value each impaired creditor is receiving is the same or more than such creditor would receive from a Chapter 7 liquidation on the Confirmation Date.

The costs of liquidation under Chapter 7 would become Administrative Claims with the highest priority against the proceeds of liquidation. Such costs would include the fees payable to a Chapter 7 trustee, as well as those which might be payable to attorneys, financial advisors, appraisers, accountants and other professionals that such trustee may engage to assist in the liquidation. In addition, Chapter 7 costs would include any liabilities incurred or assumed pursuant to the transactions necessary to effectuate the liquidation. Moreover, claims entitled to administrative priority may arise by reason of any breach or rejection of any executory contracts entered into by the Debtor during the pendency of the Case in chapter 11.

After satisfying Administrative Claims arising in the course of the chapter 7 liquidation, the proceeds of the liquidation would then be payable to satisfy any unpaid expenses incurred during the time this Case was pending under chapter 11, including compensation for attorneys, financial advisors, appraisers, accountants and other professionals retained by the Debtor.

**Liquidation Analysis.** The Proponent has concluded that the Plan provides to each Creditor and Interest Holder a recovery with a *present value* which equals or exceeds the distribution that such person would receive if the Debtor was to be liquidated under Chapter 7 of the Bankruptcy Code. The Plan provides for the liquidation of the Debtor's assets, but avoids the additional costs and expenses that would be incurred in Chapter 7, such as trustee's fees. In addition, the Plan provides for the payment by the Proponent to General Unsecured Claims in the amount of $50.00 if the Proponent is the Successful Bidder with a credit bid. In Chapter 7, such payment would not occur.

**Feasibility.** For the Plan to be confirmed, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor. This Plan calls for the Sale of the Debtor's Property to the Successful Bidder and for the Proponent to satisfy any shortfall in the event such Sale does not generate sufficient cash to make the payments required under the Plan. Thus, the Plan meets the feasibility requirements of the Bankruptcy Code.

## EFFECT OF CONFIRMATION

### LIMITATION OF LIABILITY

Section 1125(e) of the Bankruptcy Code, commonly referred to as the "safe harbor," protects persons acting in good faith, from civil claims arising in connection with solicitations of acceptances of plans of reorganization or participating in the offer, issuance, sale or purchase of a

24

security under the Plan.  Pursuant to Section 1125(e), as set forth in Article 8 of the Plan, neither the Proponent or its nominee(s), nor any of their respective officers, directors, members, general partner, managers or employees (acting in such capacity), nor any professional person employed by any of them shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any other action taken or omitted to be taken in connection with the Plan except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts. Nothing contained herein shall limit the liability of professionals pursuant to Rule 1.8(h)(1) of the New York State Rules of Professional Conduct.  From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any claim or liability released to the extent provided by Article 9 of the Plan.

### INJUNCTION

Except (a) as otherwise provided in the Plan; (b) as otherwise provided under the Confirmation Order entered by the Bankruptcy Court; or (c) as to the Proponent's lien to the extent the Property is sold subject to such lien, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin with respect to any claim or interest held as of the Effective Date: (y) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Property or property of the Estate that has been, or is to be, distributed under the Plan, and (z) the creation, perfection or enforcement of any lien or encumbrance against the Property or any property of the Estate that has been, or is to be transferred or distributed under the Plan.

Except as otherwise provided in the Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset, from the Debtor, Proponent or from the Property or property of the Estate, any claim, obligation or debt that was held by any person or entity as of the Effective Date except pursuant to the terms of the Plan.

### RELEASE

Except (i) as otherwise provided in the Plan, (ii) as otherwise provided under Final Order entered by the Bankruptcy Court, or (iii) with respect to the Debtor's obligations under this Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin on and after the Confirmation Date: (a) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the any property of the Estate, including the Property sold under this Plan (except to the extent such Property is sold subject to the Proponent's liens); or (b) the creation, perfection or enforcement of any lien or encumbrance against any property of the Estate, including the Property sold under this Plan (except to the extent that such Property is sold subject to the Proponent's liens).  Since this Plan provides for the liquidation of all or substantially all of the property of the Estate, the Confirmation of the Plan will not result in a discharge of the Debtor's pre-Petition Date Claims.

### ALTERNATIVES TO THE PLAN

If the Plan is not confirmed by the Bankruptcy Court the alternatives may include (a) liquidation of the Debtor under chapter 7 of the Bankruptcy Code or (b) the formulation, promulgation and confirmation or an alternative plan of reorganization involving a sale to a different purchaser; or (c) the dismissal of the Debtor's case.

The Proponent believes that the Plan provides a recovery to all Creditors and Interest Holders equal to or greater than would be obtainable in chapter 7 liquidation or foreclosure sale and believes that the Plan enables Creditors to realize the most value under the circumstances.

The Proponent reserves its right to file an amended plan and/or disclosure statement.

### CERTAIN FEDERAL INCOME TAX CONSEQUENCES

The following summary of certain U.S. Federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the particular circumstances pertaining to each holder of an Allowed Claim. Each holder of an Allowed Claim is urged to consult his own tax advisors. This summary does not cover all potential U.S. federal income tax consequences that could possibly arise under the Plan and does not address the Plan's U.S. federal income tax consequences for any holder of an Allowed Claim that is a partnership (or other pass-through entity) or otherwise subject to special tax rules.

The Proponent has not requested any ruling from the Internal Revenue Service or any other taxing authority with respect to such matters nor will the Proponent, with respect to the federal income tax consequences of the Plan, obtain any opinion of counsel. Consequently, there can be no assurance that the treatment set forth in the following discussion will be accepted by the IRS. The Proponent offers no statements or opinions that are to be relied upon by the creditors as to the treatment of creditors' claims under the Plan. Matters not discussed in this Disclosure Statement may affect the tax consequences of the Plan on any particular holder of a Claim or Equity Interest

This summary is based upon the laws in effect on the date of this Disclosure Statement and existing judicial and administrative interpretations thereof, all of which are subject to change, possibly with retroactive effect. Holders of Allowed Claims should consult their own tax advisors as to the Plan's specific federal, state, local and foreign income and other tax consequences.

The tax consequences to Creditors and Interest Holders will differ and will depend on factors specific to each Creditor or Interest Holder, including but not limited to: (i) whether the Claim or Interest (or portion thereof) constitutes a claim for principal or interest; (ii) the origin of the Claim or Interest; (iii) the type of consideration received by the Creditor or Interest Holder in exchange for the Claim or Interest; (iv) whether the Creditor or Interest Holder is a United States person or foreign person for tax purposes; (v) whether the Creditor or Interest Holder reports income on the accrual or cash basis method; and (vi) whether the Creditor or Interest Holder has taken a bad debt deduction or otherwise recognized loss with respect to a Claim or Interest.

4888-2516-2114, v. 5

**THERE ARE MANY FACTORS WHICH WILL DETERMINE THE TAX CONSEQUENCES TO EACH CREDITOR OR INTEREST HOLDER. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX, AND IN SOME CASES, UNCERTAIN. THEREFORE, IT IS IMPORTANT THAT EACH CREDITOR OR INTEREST HOLDER OBTAIN HIS, HER OR ITS OWN TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH CREDITOR OR INTEREST HOLDER AS A RESULT OF THE PLAN.**

**THE DISCUSSION HEREIN IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY CREDITOR OR INTEREST HOLDER FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON A TAX PAYER. THE DISCUSSION HEREIN WAS WRITTEN TO SUPPORT THE TRANSACTIONS DESCRIBED IN THIS DISCLOSURE STATEMENT. EACH CREDITOR OR INTEREST HOLDER SHOULD SEEK ADVICE BASED UPON THE CREDITOR'S OR INTEREST HOLDER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

### ADDITIONAL INFORMATION

Requests for information and additional copies of this Disclosure Statement and the other materials delivered together herewith and all deliveries, correspondence and questions, as the case may be, relating to the Plan should be directed to (i) Counsel to the Proponent, Kriss & Feuerstein LLP., 360 Lexington Avenue, Suite 1200, New York, New York, New York 10017 – Attn: Jerold C. Feuerstein, Esq., Daniel N. Zinman, Esq. & Stuart L. Kossar, Esq., (ii) The United States Trustee, Alexander Hamilton Custom House, One Bowling Green, Room 510, New York, NY 10004-1408, and be filed electronically in accordance with the Court's ECF procedures. Documents submitted in these cases are on file in the Office of the Clerk of the United States Bankruptcy Court, Eastern District of New York, 271-C Cadman Plaza, Esq, Suite 1595, Brooklyn, NY 11201, and are ordinarily available for public inspection Monday through Friday, between the hours of 8:30 a.m. and 5:00 p.m.

[The remainder of this page has been left intentionally blank]

4888-2516-2114, v. 5

## CONCLUSION

The Proponent believes that confirmation of the Plan is in the best interests of all Creditors.

Dated: New York, New York
       February 2, 2024

**KRISS & FEUERSTEIN LLP**

By:    */s/ Jerold C. Feuerstein*
      Jerold C. Feuerstein, Esq.
      Daniel N. Zinman, Esq.
      Stuart L. Kossar, Esq.
      360 Lexington Avenue, Suite 1200
      New York, New York 10017
      (212) 661-2900

      *Attorneys for LCP NPL XI, 2019 LLC*

**LCP NPL XI, 2019 LLC**

By:    */s/ Alan Leavitt*
      Alan Leavitt, Manager