UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------x

In re:                                           Chapter 11

    139-58th St LLC,                          Case No. 23-42151-jmm

                              Hon. Jil Mazer-Marino

              Debtor.          United States Bankruptcy Judge

----------------------------------------------------------x


## LCP NPL XI, 2019 LLC'S AND DEBTOR'S AMENDED JOINT PLAN OF REORGANIZATION FOR DEBTOR

THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN.
ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE
STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS PLAN
IS BEING SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL BUT HAS
NOT BEEN APPROVED BY THE BANKRUPTCY COURT.

**KRISS & FEUERSTEIN LLP**
360 Lexington Avenue, Suite 1200
New York, New York 10017
(212) 661-2900
Jerold C. Feuerstein, Esq.
Daniel N. Zinman, Esq.
Stuart L. Kossar, Esq.

*Attorneys for LCP NPL XI, 2019 LLC*


**LAW OFFICE OF CHARLES WERTMAN P.C.**
100 Merrick Road, Suite #304W
Rockville Centre, New York 11570
(516) 284-0900

*Attorneys for 139-58th St LLC*

# ARTICLE I

## INTRODUCTION

LCP NPL XI, 2019 LLC ( "**Secured Creditor**") and 139-58th St LLC (the "**Debtor**" and together with Secured Creditor, the "Proponents"), as debtor and debtor-in-possession, hereby jointly propose the following Chapter 11 Plan (the "**Plan**") pursuant to Section 1121(a) of Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").  Reference is made to the "**Disclosure Statement**" for risk factors and a summary and analysis of the Plan and certain related matters.  The Debtor and the Secured Creditor are the joint proponents of the Plan within the meaning of Section 1129 the Bankruptcy Code.  Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the provisions of the Plan, the Proponents expressly reserve the right to alter, amend, revoke or modify the Plan, as needed, at any time prior to substantial consummation thereof.

## DEFINITIONS

Unless the context otherwise requires (i) the following terms shall have the following meanings when used in this Plan; (ii) any capitalized term that is used in this Plan and not defined in this Article 1 but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning set forth therein; (iii) terms stated in the singular shall include the plural and vice versa; (iv) pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter; (v) all section, article and exhibit references in this Plan are to the respective section of, article of or exhibit to this Plan; (vi) any reference to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions, means that such document shall be substantially in such form or substantially on such terms and conditions except as stated otherwise in this Plan; (vii) any reference to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (viii) the words "herein", "hereof', "hereto" or "hereunder" and other words of similar import refer to this Plan in its entirety rather than to only a particular portion of this Plan; (ix) the rules of construction set forth in Section 102 of the Bankruptcy Code shall govern construction of this Plan; and (x) any reference contained herein to the Bankruptcy Code, or to any section of the Bankruptcy Code, refers to the Bankruptcy Code, or such section of the Bankruptcy Code, as it is existing and effective on the Petition Date, except to the extent, if any, that any post-Petition Date amendment to the Bankruptcy Code applies retroactively to cases filed on the Petition Date.

**1.1**     "**3d Pty Buyer**" shall mean LM 139 LLC the prospective purchaser of the Property.

**1.2**     "**Administrative Expense**" or "**Administrative Claim**" means any cost or expense of administration of this Case, other than Statutory Fees, allowable under Section 503(b) of the Bankruptcy Code.

**1.3**     "**Allowed**" when used with "Claim" or "Administrative Expense" means a Claim or Administrative Expense against a Debtor that has not been disallowed pursuant to

a Final Order and is not a Disputed Claim and (i) with respect to which a Proof of Claim or Proof of Administrative Expense Claim has been timely filed with the clerk of the Bankruptcy Court or, (ii) if no Proof of Claim has been filed, that has been or hereafter is listed by a Debtor in the Schedules as liquidated in amount and not disputed or contingent.  The amount of an Allowed Claim that is listed in the Schedules and for which a Proof of Claim has been filed (and no objection to such Proof of Claim is outstanding or granted), shall be the amount listed in the Proof of Claim.

**1.4** "**Allowed Interest**" means an Interest in a Debtor that has not been disallowed and with respect to which (i) a proof of interest has been timely filed or, (ii) if no proof of interest has been timely filed, that has been or hereafter is listed by a Debtor in the Schedules as liquidated in amount and not disputed or contingent.

**1.5** "**Assumption Notice**" shall have the meaning set forth in section 5.1 of this Plan.

**1.6** "**Auction**" means the auction to be conducted pursuant to the Bid Procedures in connection with the Sale.

**1.7** "**Available Cash**" means all Cash of the Debtor on the Effective Date, including the net proceeds of the Sale of the Property and the Property Causes of Action whether from the 3d Pty Buyer or any other buyer and/or in the Debtor-In-Possession Account.

**1.8** "**Bankruptcy Code**" means Title 11 of the United States Code, as amended from time to time and effective as to the Case as filed on the Petition Date.

**1.9** "**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of New York or the United States District Court for the Eastern District of New York to the extent it withdraws the reference over all or any portion of this Case pursuant to §157(d) of Title 28 of the United States Code.

**1.10** "**Bankruptcy Rules**" mean (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of New York, in either case, as now in effect or hereinafter amended.

**1.11** "**Bar Date**" means the date by which proofs of claim on account of pre-Petition Date obligations of the Debtor must be filed as established by Order of the Bankruptcy Court.

**1.12** "**Bid Procedures**" means those procedures approved by the Bankruptcy Court and attached to the Disclosure Statement as Exhibit C that govern the conduct of the Auction for the Property and the Property Causes of Action, the qualification of bidders to bid at each Auction and other matters related thereto.

**1.13** "**Broker**" shall mean Hentze-Dor Realty, LLC in connection with the plan to be filed prior to and heard at the hearing on the approval of the disclosure statement, which shall conduct the Auction in accordance with the Bid Procedures.

**1.14** "**Business Day**" means any day other than a Saturday, Sunday, or other day on which commercial banks in New York, New York are authorized or required by law to close, or other Legal Holiday.

**1.15**  **"Case"** means the applicable bankruptcy case of one of the Debtor.

**1.16**  **"Cash"** means, on any Business Day, immediately available funds, in United States dollars, which may be spent or transferred without restriction (other than as may be provided in this Plan or in the Confirmation Order) no later than the next Business Day.

**1.17**  **"Causes of Action"** means, without limitation, any and all actions, causes of action, controversies, liabilities, obligations, rights, suits damages, judgments, claims, and demands whatsoever, whether know or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertible directly or derivatively, existing or hereafter arising, in law, equity, or otherwise.

**1.18**  **"Claim"** means claim as defined in Section 101(5) of the Bankruptcy Code.

**1.19**  **"Class"** means a category of substantially similar Claims or Interests as established pursuant to Article 3 of this Plan.

**1.20**  **"Closing"** means the closing of the sale of the Property and the Property Causes of Action to the 3d Pty Buyer or the Successful Bidder as applicable at which point title to the Property and the Property Causes of Action will be transferred to the 3d Pty Buyer or the Successful Bidder as applicable in accordance with the Sale Approval Order. The Closing, unless ordered otherwise by the Bankruptcy Court, shall take place on the Effective Date.

**1.21**  "**Confirmation" or** "**Confirmation Date"** means the date on which the Confirmation Order is entered.

**1.22**  **"Contract of Sale"** means the contract of sale and all riders annexed thereto entered into between 3d Pty Buyer and the Debtor for the sale of the Debtor's Property.

**1.23**  "**Confirmation Hearing**" means the hearing(s) at which the Court hears testimony and/or argument concerning whether to confirm this Plan.

**1.24**  "**Confirmation Hearing Date"** means the date the Court holds the Confirmation Hearing. If said hearing is conducted on more than one day, each day shall be a Confirmation Hearing Date.

**1.25**  **"Confirmation Order"** means an Order confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

**1.26**  "**Creditor"** means a holder of a Claim that has not been disallowed pursuant to a Final Order.

**1.27**  "**Debtor"** shall have the same meaning as such terms are defined above.

**1.28**  "**Debtor Broker"** means Greiner Maltz Realty Company of New York Inc. who is the Debtor's Broker under the Contract of Sale.

**1.29** **"Disbursing Agent"** means Law Offices of Charles Wertman, P.C. only if the Debtor exercises the Payment Option on before the Termination Date and there is no Termination Event. In all other instances Kriss & Feuerstein LLP shall be the Disbursing Agent.

**1.30** **"Disclosure Statement"** means the Disclosure Statement for this Plan, including all exhibits, attachments or amendments thereto, approved by Final Order of the Bankruptcy Court as containing "adequate information" within the meaning of Section 1125 of the Bankruptcy Code.

**1.31** **Disputed Claim"** means (a) any Claim that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Claim has been filed; and (b) any Claim (including an Administrative Expense), or portion thereof, that has not been disallowed and with respect to which an objection or action concerning the allowance and/or extent thereof, in whole or in part, has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection or action has not been resolved by a Final Order.

**1.32** **Disputed Claim Reserve"** means the segregated account or accounts established by the Disbursing Agent, at a banking institution that is an authorized bank depository in the Eastern District of New York, pursuant to section 8.8 of this Plan.

**1.33** **"Effective Date"** means the later of (i) one Business Day after the Confirmation Order becomes a Final Order; or (ii) the date all conditions to the Effective Date, *see* section 10.2 of the Plan, have been satisfied or waived by the Entity entitled by this Plan to waive such condition and the Sale has closed.

**1.34** **"Entity"** means entity as defined in Section 101(15) of the Bankruptcy Code.

**1.35** **"Estate"** means each Debtor's estate created on the Petition Date pursuant to Section 541 of the Bankruptcy Code.

**1.36** **"Executory Contract"** means an executory contract within the meaning of Section 365 of the Bankruptcy Code.

**1.37** **"Foreclosure Action"** means the commercial mortgage foreclosure action "commenced by Secured Creditor having filed a summons  and complaint in New York State Supreme Court, County of Kings under Index No. 5514848/2019 in the matter originally styled *Flushing Bank v.139-58th St LLC, et al*.

**1.38** **"Final Order"** means an order which is: (i) not subject to a pending appeal; (ii) no longer appealable, or if appealed, affirmed on appeal with no further appeals possible; except that the Confirmation Order shall be deemed a Final Order on the first Business Day after entry thereof so long as no stay of a Court of competent jurisdiction staying consummation of the Plan.

**1.39** **"General Unsecured Claim"** means a Claim that is not entitled to priority under Bankruptcy Code Section 503(b) or 507 and/or is not secured by a lien against property of a Debtor in accordance with Bankruptcy Code Section 506(a), including the LCP Unsecured Claim and the SBA Unsecured Claim (to the extent that they are not Administrative Expenses), but shall exclude Administrative Expenses, a Statutory Fee, a Priority Claim or an Other Secured Claim.

**1.40**     **"Impaired**" means any class that does not satisfy the requirements to be Unimpaired under Bankruptcy Code Section 1124.

**1.41**     **"Interests"** means any and all equity interests held in the Debtor.

**1.42**     **"Interest Holder"** means the holder of an Allowed Interest.

**1.43**     **"Legal Holiday"** means a Legal Holiday as that term is defined in Bankruptcy Rule 9006(a).

**1.44**     "**Lien"** means a charge, hold, claim, or encumbrance upon any property of the Estate.

**1.45**     **"LCP Claim"** means the claim of the Secured Creditor, LCP NPL XI, 2019 LLC against the Debtor, which shall be Allowed in the amount of $5,068,761.98, plus protective advances, applicable fees, and applicable costs, with interest from the Petition Date at the default rate specified in the note underlying the LCP Claim.

**1.46**     "**LCP Secured Claim"** means the portion of the LCP Claim that is secured by a valid, enforceable Lien on property of the Estate under applicable non-bankruptcy law that was perfected as of the Petition Date.

**1.47**     "**LCP Unsecured Claim"** means the portion of the LCP Claim that is not secured by a valid, enforceable Lien on property of the Estate, if any, due to the LCP Claim being undersecured in accordance with Bankruptcy Code Section 506(a).

**1.48**     "**NYC Glass"** means NYC Glass Corp., the occupant/tenant at the Property owned by Rush.

**1.49**     **"Official Committee**" means the official committee of unsecured creditors appointed by the U.S. Trustee to represent the interest of unsecured creditors in the Cases.

**1.50**     "**Order"** means an order of the Bankruptcy Court.

**1.51**     **"Other Secured Claim"** means an Allowed Claim, including all amounts, if any, allowed pursuant to Section 506(b) of the Bankruptcy Code, to the extent that it is secured by a Lien on property of the Estate or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to set-off, as applicable, as determined pursuant to Section 506(a) of the Bankruptcy Code; provided, however, that an Other Secured Claim shall not include the LCP Secured Claim.

**1.52**     **"Payment Option"** means the option for Debtor to retain the Property instead of Secured Creditor (or its assignee, designee or nominee) proceeding with the auction of the Property provided that the Debtor complies with the following terms and conditions on or before the Termination Date, TIME BEING OF THE ESSENCE: (i) Debtor shall pay Secured Creditor $5,150,000.00 by wiring instructions provided to Debtor's counsel from the closing of the Contract of Sale; (ii) Debtor shall pay amounts required to take the Plan Effective including (but not

limited to) amounts paid on account of Claims; (iii) Debtor shall pay all real estate taxes that accrue and all interest that accrues on any real estate taxes or tax lien; (iv) Debtor shall pay all Administrative Claims; and (v) Debtor shall pay the Debtor's Broker fee in the amount of $174,000.00. Debtor shall not be required to provide notice of the Payment Option and said notice is deemed provided.

   **1.53**  **"Petition Date"** means June 20, 2023, the date on which this Case was commenced by the filing of a voluntary petition for relief under chapter 11 of the Bankruptcy Code by the Debtor.

   **1.54**  **"Plan"** means this Plan, as it may be amended, supplemented or modified from time to time, including any exhibits or schedules annexed hereto or required to be filed with the Bankruptcy Court pursuant hereto.

   **1.55**  **"Plan Supplement"** shall mean the plan supplement to be filed no later than 14 days prior to the Confirmation Hearing.

   **1.56**  **Priority Claim"** means that portion of an Allowed Claim entitled to priority under Section 507 of the Bankruptcy Code other than an Other Secured Claim, the LCP Secured Claim, the SBA Secured Claim, or Statutory Fees.

   **1.57**  **"Professional"** means all professionals employed pursuant to Bankruptcy Court order by a Debtor under applicable sections of the Bankruptcy Code.

   **1.58**  **"Proof of Claim"** means a Proof of Claim filed pursuant to Section 501 of the Bankruptcy Code and the applicable Bankruptcy Rules.

   **1.59**  **"Property"** means the real property and improvements commonly known as 139-58th Street a/k/a 139-143 58th Street a/k/a 140-144 57th Street, Brooklyn, NY 11220 (Section: 3, Block: 844, Lot: 23) and owned by Debtor.

   **1.60**  **"Property Causes of Action"** means Causes of Action that run with or directly relate to the Property, including tax abatements, but and excluding any Causes of Action against the Secured Creditor, or its partners, members, assignees, employees, directors, managers, officers or agents acting in their capacity as such.

   **1.61**  **"Pro Rata"** means the proportion an Allowed Claim or an Allowed Interest in a particular Class bear to the aggregate amount of all Allowed Claims or Allowed Interests in such Class.

   **1.62**  **"Receiver"** shall mean Barton Schwartz, the receiver appointed in the Foreclosure Action.

   **1.63**  **"Rush"** shall mean Janet Rush, Debtor's principal and owner of NYC Glass Corp.

   **1.64**  **"Rush Entity"** shall mean an entity owned or controlled by Janet Rush which shall provide funding to the 3d Pty Buyer for the purchase of the Property**.**

**1.65** **"Rush Mortgage"** shall mean the $2.8 million loan from Janet Rush or the "Rush Entity.

**1.66** "**Sale**" means the sale of the Property and the Property Causes of Action pursuant to the Bid Procedures.

**1.67** **"Sale Approval Order"** means the order approving the Sale of the Property and the Property Causes of Action to the 3d Pty Buyer or the Successful Bidder, which may also be the Confirmation Order.

**1.68** "**Schedules**" mean the schedules of assets and liabilities and the Statement of Financial Affairs filed by a Debtor with the Bankruptcy Court in accordance with Section 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules and any amendments thereto.

**1.69** "**Statutory Fees**" mean all fees and charges assessed against the Estate under Section 1930 of title 28 of the United States Code.

**1.70** **"Successful Bidder"** means the bidder who the Court determined made the highest and/or best bid for the Property and the Property Causes of Action and whose bid is approved by the Court.

**1.71** "**Termination Date**" shall mean May 31, 2024.

**1.72** **"Termination Events"** shall mean the occurrence of any one or more of the following events shall constitute a termination event (hereinafter, a "Termination Event"): (i) Debtor, any affiliate of the Debtor, Rush, NYC Glass, or any other parties to the Contract of Sale filing of any paper or pleading in the Bankruptcy Case (or any person or entity acting in concert with either), including but not limited to a notice of appeal, opposition to any motion, or any motion, including orders to show cause that is not inconsistent with the Plan and Disclosure Statement; (ii) Debtor, any affiliate of the Debtor, Rush, NYC Glass, or any other parties to the Contract of Sale seek to lease and/or transfer the Property without the consent of the Secured Creditor other pursuant to the Contract of Sale; (iii) Failure of the Debtor to comply with any term of the Plan; (iv) Any affiliate of the Debtor, Rush, NYC Glass, or any other parties to the Contract of Sale filing a bankruptcy petition; (v) Failure of the Debtor to keep the Property insured with property and liability insurance in accordance with the terms and conditions of the Bankruptcy Code; (vi) Failure of Debtor to tender any payments under of this Plan by the Termination Date; (vii) Failure of Debtor to pay any United States Trustee Fees; (viii) Failure of the Debtor to pay any real estate taxes; and (ix) Failure of Debtor to exercise the Payment Option on before the Termination Date.

**1.73** "**Transfer Taxes**" means any and all stamp taxes or similar taxes, if and as applicable, within the meaning of Section 1146(a) of the Bankruptcy Code.

**1.74** **"Unexpired Lease"** means an unexpired lease within the meaning of Section 365 of the Bankruptcy Code.

**1.75** **"Unimpaired"** means any class that does satisfies the requirements to be unimpaired under Bankruptcy Code Section 1124.

# ARTICLE 2

## TREATMENT OF UNCLASSIFIED CLAIMS

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, this Plan does not classify Statutory Fees or Administrative Expenses.  Such Claims, to the extent Allowed, shall receive the treatment provided in this Article 2 in full satisfaction, release and discharge thereof.

**2.1     Statutory Fees**

All fees and charges payable to the United States Trustee, including the Statutory Fees and any applicable interest thereon, that are due on or prior to the Effective Date, shall be paid no later than ten (10) days after the Effective Date from Available Cash.  Such fees, together with any applicable interest thereon, that may become due after the Effective Date shall be paid as they become due by the from Available Cash by the Debtor if the Debtor exercises, the Payment Option and the is no Termination Event or by the Secured Creditor if the Debtor does not exercise the Payment Option or there is a Termination Event until the entry of a final decree closing the Chapter 11 Case, or until the Chapter 11 Case is converted or dismissed, whichever occurs earlier from Available Cash. Notwithstanding the forgoing, the Debtor shall pay: (i) all United States Trustee fees that have accrued within 7 days of the filing of the Plan, (ii) all United States Trustee Fees when due going forward after filing of the Plan; and (iii) all United States Trustee Fees and/or commissions due upon the Effective Date.

**2.2  Administrative Claims**

(a) All Administrative Claims, other than Administrative Claims of professionals, must be filed and served no later than fourteen (14) days after entry of the Confirmation Order.  Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of (a) the Effective Date, (b) the date payment of such Claim is due under the terms thereof or applicable law, or (c) three (3) Business Days after such Claim becomes an Allowed Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the  holder of such Claim and the Debtor, if the Debtor exercises the Payment Option and there is no Termination Event, or the Secured Creditor, if the Debtor does not exercise the Payment Option other is Termination Event; provided, however, that any Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto.

(b) All Professionals shall file final applications for approval of compensation and reimbursement of reasonable and necessary expenses pursuant to Section 330 of the Bankruptcy Code no later than fourteen (14) days following the Confirmation Date.  Any such application timely filed shall be deemed to be an Administrative Claim, subject to the entry of a Final Order by the Bankruptcy Court approving such application. Objections to any Professional's application for compensation or reimbursement must be timely filed and served upon such Professional, the Debtor, the United States Trustee and the Disbursing Agent in accordance with the Bankruptcy Rules or any order entered by the Bankruptcy Court.  Upon entry of a Final Order approving such

an application, the fees shall be paid on the later of seven days after the entry of such Order and the Effective Date or in accordance with this Plan or as otherwise agreed to by the Professional and the Secured Creditor.

## ARTICLE 3

## CLASSIFICATION OF CLAIMS AND INTERESTS AND IMPAIRMENT

Except as may otherwise be provided in Article 2, Allowed Claims and Allowed Interests are classified as set forth in this Article 3. A Claim or Interest is in a particular Class designated herein only to the extent such Claim or Interest (i) fits within the description of such Class and is in such other and different Class or Classes to the extent that the remainder thereof fits within the description of such other Class or Classes and (ii) has not been paid, released or otherwise satisfied prior to the Effective Date. For the avoidance of doubt, each Class comprises only Allowed Claims and Allowed Interests, as the case may be, fitting with such Class.

All Allowed Impaired Claims that are or may receive a distribution under this Plan are entitled to vote to accept or reject the Plan. Any Allowed Impaired Claims in a Class that cannot under any circumstances receive any distribution under this Plan are not entitled to vote and such Class is deemed to reject the Plan pursuant to Bankruptcy Code Section 1127(g). All Allowed Unimpaired Claims are not entitled to vote to accept or reject the Plan and the Class in which such Allowed Unpaired Claims are classified is deemed to accept the Plan pursuant to Bankruptcy Code Section 1127(f).

### 3.1    Class 1

Class 1 consists of Other Secured Claims (*i.e.*, other than the LCP Secured Claim). The Other Secured Claims in Class 1 are Unimpaired under this Plan. If there is more than one Claim in Class 1, each such Claim shall be considered to be in a separate sub-class within Class 1.

### 3.2    Class 2

Class 2 consists of the LCP Secured Claim. The LCP Secured Claim in Class 2 is Impaired under this Plan.

### 3.3    Class 3

Class 3 consists of all Priority Claims. The Priority Claims in Class 3 are Unimpaired under this Plan.

### 3.4    Class 4

Class 4 consists of all General Unsecured Claims (*i.e.*, including the LCP Unsecured Claim). The General Unsecured Claims in Class 4 are Unimpaired under this Plan.

### 3.5    Class 5

Class 5 consists of Interests in the Debtor. The Interests in Class 5 are not Impaired under

this Plan.

# ARTICLE 4

# TREATMENT OF CLAIMS AND INTERESTS

### 4.1     Class 1 –Other Secured Claims

The holders of the Allowed Class 1 Other Secured Claims will receive on account of such claims Available Cash sufficient to pay such Claims in full, on the Effective Date or as soon thereafter as is reasonably practicable.

### 4.2     Class 2 – LCP Secured Claim

If the Debtor exercises the Payment Option on or before the Termination Date and no Termination Event has occurred, the holder of the Allowed Class 2 LCP Secured Claim will receive on account of such claim an amount equal to the agreed discounted payoff in the sum of $5,150,000.00 from Debtor (or its affiliate) or on or before the Termination Date., which sum shall be considered payment in full of all claims to LCP.

If Debtor fails to exercise the Payment Option and/or a Termination Event occurs, Secured Creditor (or its assignee, nominee or designee) is entitled to receive the full amount of the Allowed Class 2 LCP Secured Claim including (but not limited to) interest and attorneys' fees and shall proceed with the Auction and the holder of the Allowed Class 2 LCP Secured Claim will receive on account of such claim on or about the Effective Date either a distribution of Available Cash sufficient to allow for payment in full of the LCP Secured Claim or the Property and the Property Causes of Action following a successful credit bid; provided, however, that such payment shall be reduced pursuant to section 6.2 hereof to the extent required to allow for payment in full on the Effective Date of the Claims in Class 1, Class 3 Claim, the Statutory Fees and Administrative Claims and any other payments required to be made under the Plan.

### 4.3     Class 3 –Priority Claims

The holders of the Class 3 Claims will receive from Available Cash sufficient to pay such Claims Effective Date or as soon thereafter as is reasonably practicable.

### 4.4     Class 4 –General Unsecured Claims

Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, and with the exception of holders of General Unsecured Claims who waive any distribution under the Plan on account of their Class 4 General Unsecured Claims, each holder of an Allowed Class 4 General Unsecured Claim will receive on account of such claim payment in full from Available Cash on account of its claim to holders of Claims in Class 4 other than the LCP Unsecured Claim, the Secured Creditor agreeing to waive the right to receive any distribution from such as a member of this Class if it is the Successful Bidder.

### 4.5     Class 5 – Interests

Holders of Allowed Class 5 Interests shall continue to retain and maintain such Interests in Debtor and the Post-Confirmation Debtor following the Effective Date of the Plan in the same percentages as existed as of the Petition Date.

## ARTICLE 5

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 5.1       Treatment of Executory Contracts; Bar Date for Rejection Claims

All Executory Contracts or Unexpired Leases to which a Debtor is a party as of the Effective Date which were not previously rejected, assumed, or assumed and assigned by a Debtor shall be rejected under the Plan as of the Effective Date in accordance with the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code, unless an Executory Contract or Lease is listed as assumed and assigned to a Successful Bidder on a notice to be filed by the Successful Bidder with the Bankruptcy Court (the "**Assumption Notice**"), with such notice being served by the Successful Bidder on the counterparty to each such Executory Contract or Unexpired Lease, no later than fourteen (14) days prior to the Effective Date.

### 5.2       Claims Arising From Rejection, Expiration or Termination

Holders of Claims created by the rejection of executory contracts and unexpired leases or the expiration or termination of any executory contract or unexpired lease must file in the Bankruptcy Court and serve on the Successful Bidder and the Secured Creditor a proof of claim within 21 days after service on such holder of the Assumption Notice or notice of the expiration of the deadline to serve the Assumption Notice, which shall inform such holder of this bar date.  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan against the applicable Debtor, subject to objection by the Secured Creditor.  After receipt of such proof of claim, the Secured Creditor shall have 14 days to file an objection, failing which such Claim shall be an Allowed Claim.

## ARTICLE 6

## IMPLEMENTATION OF THE PLAN

### 6.1   Implementation

If the Debtor exercises the Payment Option on or before the Termination Date[1] and no Termination Event has occurred, the Debtor will sell the Property to the 3d Pty Buyer. In the event the Debtor exercises the Payment Option prior to the Termination Date, the Debtor's Broker shall be entitled (subject to court approval) a commission of $174,000.00 to be paid by the Debtor.

However, if the Debtor does not exercise the Payment Option by Termination Date or there is a Termination Event, the Broker shall conduct the Auction of the Property and the Property Causes of Action in accordance with the Bid Procedures with marketing to begin no

---

[1]  The Termination Date can only be extended upon: (i) mutual consent of the Proponents or (ii) Bankruptcy Court order.

earlier than June 1, 2024.  Thereafter, the Secured Creditor shall consummate the sale of the Property and the Property Causes of Action to the Successful Bidder consistent with the Bid Procedures, the Sale Approval Order and this Plan.  The Bid Procedures shall provide that the Secured Creditor (or its nominee, affiliate or designee) may make a credit bid up to the full Allowed amount of the LCP Claim, though it is under no obligation to do so.  Notwithstanding anything else herein to the contrary, the Successful Bidder may take the Property and the Property Causes of Action subject to one or more of the Secured Creditor's mortgages at the Secured Creditor's sole and absolute discretion.  The Broker's fees shall be paid from a buyer's premium. If the Debtor does not exercise the Payment Option by the Termination Date of if there is a Termination Event, the Contract of Sale and any license agreement are null and void. In addition, the Debtor's Broker shall not receive any payment.  In the event Secured Creditor is the successful bidder at the Auction, Secured Creditor may assign its bid to its nominee assign or designee.

The Confirmation Order shall contain appropriate provisions, consistent with Section 1142 of the Bankruptcy Code that, among other things: (A) in the event the Debtor does not Exercise the Payment Option or if there is a Termination Event, directs the Debtor to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of the Property and the Property Causes of Action to the Successful Bidder and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of this Plan and if Debtor refuses to execute or deliver or join in the execution or delivery of any such instrument, the Secured Creditor shall be authorized to execute, deliver or join in the execution or delivery of such instrument on such Debtor's behalf; (B) direct the Debtor to transfer all Cash on hand to the Disbursing Agent immediately, which Cash shall become part of the Available Cash; and (C) directs the Disbursing Agent, on or about the Effective Date, to make the payments required under this Plan to be made on or about the Effective Date.  Pursuant to Section 1146(a) of the Bankruptcy Code, the deed conveying the Property in accordance with the Sale shall be an instrument of transfer in connection with or in furtherance of the Plan shall not be subject to tax under any law imposing a stamp tax, real estate Transfer Taxes, mortgage recording tax or similar tax, and, to the extent provided by Section 1146(a) of the Bankruptcy Code, if any, shall not be subject to any state, local or federal law imposing sales tax.  All proceeds of the Auction (after applicable expenses) shall be deposited with the Distribution Agent and become Available Cash.  To the extent Debtor seeks financing to exercise the Payment Option, any financing have the benefit of Section 1146(a) as set forth herein.

### 6.2    Funding

All payments required to be made under this Plan shall be made by the Disbursing Agent in accordance with the terms of this Plan from Available Cash.  If the Debtor exercises the Payment Option and there is no Termination Event, all payments required to be paid under this Plan will be paid by the Debtor with funds Debtor receives from the 3d Pty Buyer and/or the Rush Mortgage pursuant to the Contract of Sale.  . In the event that the Debtor does not exercise the Payment Option and/or there is a Termination Event and Available Cash on the Effective Date is insufficient to fund the Plan distributions required to be made on the Effective Date fully: (a) any shortfall will be funded by the Secured Creditor on or before the Effective Date, with any such shortfall funding constituting an Administrative Claim against the Debtor's Estate payable from Available Cash after the Effective Date (such shortfall shall be funded either (1) by reducing the distribution to be made on the Class 2 Claim or (2) through Cash provided by the Secured

Creditor); or (b) subject to section 11.5 of the Plan, the Secured Creditor will withdraw their request for Confirmation of the Plan.

### 6.3 Execution of Documents

On the Effective Date, the Debtor shall execute, release and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of this Plan. Pursuant to Sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Debtor shall be authorized to execute any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in this Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation and if a Debtor refuses to execute or deliver any such documents or notices, the Secured Creditor shall be authorized to execute such documents and/or notices on such Debtor's behalf, and the Confirmation Order shall expressly so provide.

### 6.4 Filing of Documents

Pursuant to Sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by this Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

### 6.5 Preservation of Rights of Action

On the Effective Date, if the Debtor does not exercise the Payment Option and/or there is a Termination Event: (a) all Causes of Action shall be controlled by the Secured Creditor on behalf of the Debtor's Estate, except for the Property Causes of Action, which shall be transferred to Successful Bidder and (b) all Privileges (including attorney-client and attorney work product) and all rights under any confidentiality agreements owned by the Debtor on the Effective Date shall be transferred to the Secured Creditor and the Secured Creditor shall have the right to enforce or waive such Privileges and rights as they see fit in their discretion, except as to any Privileges and any rights under any confidentiality agreements that relate to the Property Causes of Action, which shall be transferred to the Successful Bidder and the Successful Bidder shall have the right to enforce or waive such Privileges and rights as they see fit in their discretion. If the Debtor exercises, the Payment Option and there is no Termination Event, all Property Causes of Action and Privileges shall remain with the Debtor.

### 6.6 Preservation of Books and Records

On the Effective Date, all books and records of the Debtor shall be made available to the purchaser of the Property and thereafter that purchaser shall have the right to use, maintain and/or dispose of the books and records as it sees fit in its discretion.

### 6.7. Termination of Receivership.

On the Effective Date, the Receiver shall transfer to the Disbursing Agent the Receivership

Funds, if any.  After such transfer, the Receiver shall be terminated and have no further duties and/or responsibilities with respect to the management and/or preservation of the Property and the Property Causes of Action.  As soon as practicable on or after the Effective Date, the Receiver shall turnover all books and records related to the Property and the Property Causes of Action, including copies of all leases executed by the Receiver with respect to the Property to the Secured Creditor if Debtor fails to exercise the Payment Option or there is a Termination Event or to the Debtor if Debtor exercises the Payment Option and there is no Termination Event. The Receiver's managing agent, if any, shall cooperate in all respects and shall also be relieved as managing agent on the Effective Date.  The Receiver shall as promptly as practicable, file final accountings and requests for fees and commissions with the Bankruptcy Court.  The Confirmation Order shall provide for termination of the Receivership and the Receiver can file the Confirmation Order in the Foreclosure Action to obtain a discharge of the Receiver's bond.

### 6.8    Rights Upon Occurrence of Termination Event.

Upon the earlier to occur of: (i) the Termination Date; or (ii) the occurrence of a Termination Event:

a.  The Payment Option shall be null and void and no force and effect.
b.  Secured Creditor (or its assignee, designee or nominee) shall be permitted to proceed to Auction the Property with its Broker to begin marketing no earlier than June 1, 2024
c.  Secured Creditor (or its assignee, designee or nominee) shall be permitted undertake any all efforts to take the Plan Effective.
d.  The Contract of Sale is null and void.
e.  Secured Creditor (or its assignee, designee or nominee) shall be permitted to seek a deficiency judgment against Debtor and/or Rush.

## ARTICLE 7

## RESERVED

## ARTICLE 8

## PROVISIONS GOVERNING DISTRIBUTIONS

### 8.1    Disbursing Agent

All Distributions under this Plan shall be made by the Disbursing Agent who shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. All Cash received by the Disbursing Agent shall be kept in a segregated escrow account maintained at a banking institution that is an authorized depository in the Eastern District of New York.  The Disbursing Agent shall not be compensated for services rendered under the Plan and shall not be required to secure a bond.  The Disbursing Agent shall not incur any liability, other than for gross negligence, willful misconduct, criminal conduct, fraud, or for any claim for liability pursuant to 28 U.S.C. § 959 in connection with carrying out its duties under the Plan, which liability shall be expressly limited to the period commencing from the Disbursing Agent's receipt of the Available Cash and ending on the date

that all disbursements contemplated by the Plan have been distributed. The Disbursing Agent shall **not** be deemed to be an officer, fiduciary or agent of the Debtor. Furthermore, the Disbursing Agent shall have the express authority to execute a deed to the Property and other conveyance documents in place (including, but not limited to the appropriate transfer tax returns), instead of members of the Debtor, or other authorized parties of the Debtor, and shall have no other powers or authority with respect to the Debtor. The Disbursing Agent shall have no obligation to file income tax returns or similar reports with the applicable taxing authorities, which obligations shall remain with the Debtor. In addition to the foregoing, the Disbursing Agent shall deposit the funds in an Interest on Lawyers Account (IOLA) at an Eastern District of New York authorized depository.

### 8.2    Rights and Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan, (ii) make all Distributions contemplated hereby, (iii) employ and compensate professionals to represent it with respect to its responsibilities and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

### 8.3    Timing of Certain Distributions Under the Plan

Except as otherwise provided in this Plan, and subject to Sections 8.7, 8.8 and 8.9 of this Plan, any payments, distributions or other performance to be made pursuant to this Plan on account of any Disputed Claim shall be deemed to be timely made if made on or within five (5) days following the later of (i) the Effective Date, (ii) the expiration of any applicable objection deadline with respect to such Disputed Claim, or (iii) such other times provided in this Plan.

### 8.4    Method of Payment

Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to this Plan shall be made by check drawn on a domestic bank. Any escrowed, reserved or segregated funds will be held at a banking institution that is an authorized banking depository in the Eastern District of New York.

### 8.5    Objection Deadline

Unless otherwise ordered by the Bankruptcy Court or provided in this Plan, the Proponents may file and serve any objection to any Claim or Interest at any time, but in no event after the Effective Date for Claims that are otherwise entitled to payment on the Effective Date or, for all Claims that are otherwise entitled to payment after the Effective Date, the later to occur of (i) ninety (90) days following the Effective Date; or (ii) sixty (60) days after the date proof of such Claim or Interest or a request for payment of such Claim is filed with the Bankruptcy Court, unless the time is extended by the Bankruptcy Court.

### 8.6    Prosecution of Objections

After the Effective Date, Proponents shall have authority to file, prosecute, settle,

compromise, withdraw or resolve objections to Claims as it sees fit in its discretion.  .  After the Effective Date, the Proponents, may file, prosecute, settle, compromise, withdraw or resolve objections to any other Claims. Notwithstanding, the foregoing, the Debtor, Rush and/or its affiliates are not permitted to object the LCP Claim and acknowledge the that the LCP Claim is valid in all respects. If the Debtor does not exercise the Payment Option or if there is a Termination Event, the Secured Creditor shall have the sole right to prosecute objections to Claims.

### 8.7    No Distribution Pending Allowance

No payment or distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Disputed Claim are withdrawn or resolved by Final Order.

### 8.8    Escrow of Cash Distributions

On any date that distributions are to be made under the terms of this Plan, the Disbursing Agent shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash or property that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, including, but not limited to (i) Disputed Claims that may be entitled to treatment as Administrative Expenses or as Priority Claims pursuant to Sections 503 and 507 of the Bankruptcy Code, (ii) claims of Governmental Units for any tax and (iii) any amount due but not payable on the Effective Date on account of Administrative Expenses or claims entitled to priority pursuant to Sections 503 and 507 of the Bankruptcy Code. The Disbursing Agent shall also segregate any interest, dividends or proceeds of such Cash, if any. Such Cash, together with any interest, dividends or proceeds thereof, shall be held in trust for the benefit of the holders of all such Disputed Claims pending determination of their entitlement thereto.  Any escrowed, reserved or segregated funds will be held at a banking institution that is an authorized banking depository in the Eastern District of New York. The Secured Creditor may seek an order of the Bankruptcy Court estimating or limiting the amount of Cash or property that must be deposited in respect of any such Disputed Claims.

### 8.9    Distribution After Allowance

Within fourteen (14) days after the entry of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any Disputed Claim that has become an Allowed Claim.

### 8.10    Investment of Segregated Cash and Property

To the extent practicable, the Disbursing Agent may invest any Cash or other property segregated on account of a Disputed Claim, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by Section 345 of the Bankruptcy Code; provided, however, that the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds other than for liability for the violation of federal securities laws or any related regulations promulgated thereunder by the Securities and Exchange Commission and/or Financial

Industry Regulatory Authority and violation of New York State securities law (and related regulations). Any escrowed, reserved or segregated funds will be held at a banking institution that is an authorized banking depository in the Eastern District of New York.

### 8.11    Delivery of Distributions

Except as provided in sections 8.12, 8.13 and 8.14 of this Plan, distributions to holders of Allowed Claims and Allowed Interests shall be made: (1) at the addresses set forth on the respective Proofs of Claim or Proofs of Interests Filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address.

### 8.12    Undeliverable Distributions

(a)          If the distribution to the holder of any Claim or Interest is returned to the Disbursing Agent as undeliverable, the Disbursing Agent will make reasonable attempts to locate the holder of the Allowed Claim or Allowed Interest. Any further undeliverable distributions shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution (each, an "Unclaimed Distribution"). A distribution becomes an Unclaimed Distribution if three months have elapsed since a distribution is returned to the Disbursing Agent as undeliverable or six months have elapsed since a distribution check has gone uncashed and if no notice has been provided to the Disbursing Agent by the holder of the claim to which such distribution relates containing a valid address for such holder. If such a notice is provided, then, after receipt of such additional information as the Disbursing Agent may require to confirm the identity, address and ownership of such Claim, the Disbursing Agent shall make a distribution of all amounts reserved for such undeliverable distribution or unclaimed check to such Claim holder at the address provided in such notice within 14 days thereafter. All Unclaimed Distributions shall become Available Cash and shall be distributed in accordance with this Plan.

(b)          Nothing contained in this Plan shall require the Disbursing Agent to attempt to locate any holder or an Allowed Claim of an Allowed Interest.

### 8.13    RESERVED

### 8.14    Set-offs

Upon three (3) days prior written notice to the affected Creditor, the Disbursing Agent may, but shall not be required to, set-off against the distributions to be made pursuant to this Plan the claims, obligations, rights causes of action and liabilities of any nature that the Debtor may hold against the holder of an Allowed Claim on or prior to the Effective Date, provided, however, that neither the failure to effect such a set-off nor the allowance of any claim hereunder shall constitute a waiver or release by a Debtor, the Secured Creditor, the Disbursing Agent of any such claims, obligations, rights, causes of action and liabilities that the Debtor has or may have against such holder.

**8.15    Disallowance**

Except as provided in Section 5.1 hereof, any Disputed Claim for which no Proof of Claim has been filed on or prior to the Bar Date shall be disallowed and expunged as of the Effective Date.

**8.16    Surrender of Instruments; Execution of Satisfactions and Releases.**

(a)    Notwithstanding any other provision of the Plan, no Creditor that holds a note or other instrument evidencing such Creditor's Claim or Interest may receive any Distribution with respect to such Claim or Interest unless and until the original note or other original instrument evidencing such Claim or Interest shall have been validly surrendered to the Disbursing Agent at the sole cost and expense of such Creditor, except to the extent the Property and the Property Causes of Action is transferred to the Successful Bidder subject to the Secured Creditor's lien.

(b)    Any Cash or property to be distributed pursuant to the Plan on account of any such Claim shall, pending surrender, be treated as an Undeliverable Distribution pursuant to section 8.12 of the Plan.

(c)    In the event any Creditor is unable to surrender a Note or other instrument evidencing a Claim against a Debtor that has been destroyed, lost or stolen, such Entity may receive a Distribution with respect to such Claim by presenting to the Disbursing Agent, in a form acceptable to the Disbursing Agent:  (i) proof of such Entity's title to such Claim; (ii) an affidavit to the effect that the same has been lost and after diligent search cannot be located; and (iii) such indemnification as may be required by the Disbursing Agent and all other entities deemed appropriate by the Disbursing Agent from any loss, action, suit or any claim whatsoever which may be made as a result of such Entity's receipt of a Distribution under the Plan.

(d)    All questions as to the validity, form or eligibility of any Note or other instrument evidencing a Claim so surrendered shall be resolved by Final Order of the Bankruptcy Court.  Neither the Debtor nor the Disbursing Agent shall be under any duty to give notification of defects in such tender or shall incur liability for failure to give notification of such defects.

**ARTICLE 9**

**INJUNCTION AND RELEASES**

**9.1    Injunction and Releases**

Except (i) as otherwise provided in this Plan, (ii) as otherwise provided under Final Order entered by the Bankruptcy Court, or (iii) with respect to the Debtor's obligations under this Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin on and after the Confirmation Date: (a) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from any property of the Estate, including the Property and the Property Causes of Action sold under this Plan (except to the extent such Property is sold subject to the Secured Creditor's lien); or (b) the creation, perfection or enforcement of any lien or encumbrance against any property of the Estate, including the Property sold under this Plan (except to the extent such Property is sold subject to

the Secured Creditor's lien).  Since this Plan provides for the liquidation of all or substantially all of the property of the Estate, the Confirmation of the Plan will not result in a discharge of the Debtor's pre-Petition Date Claims.

Rush, NYC Glass, the Debtor, its members, and anyone purporting to act or acting on its behalf, shall release and discharge Secured Creditor (or its assignee, designee or nominee), its respective predecessors and successors-in-interest, including all shareholders, assigns, affiliates, attorneys, partners, officers, directors, from any and all actions, causes of action, controversies, liabilities, obligations, rights, suits damages, judgments, claims, and demands whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertible directly or derivatively, existing or hereafter arising, in law, equity, or otherwise, other than from the obligations of Secured Creditor (or its assignee, designee, or nominee) under the Plan, the Confirmation Order and any order(s) of this Court.

Provided the Debtor exercises the Payment Option on or before the Termination Date and there is no Termination Event, Secured Creditor, its members, and anyone purporting to act or acting on its behalf, shall release and discharge Rush, NYC Glass, the Debtor (or its assignees, designees or nominees), its respective predecessors and successors-in-interest, including all shareholders, assigns, affiliates, attorneys, partners, officers, directors, from any and all actions, causes of action, controversies, liabilities, obligations, rights, suits damages, judgments, claims, and demands whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertible directly or derivatively, existing or hereafter arising, in law, equity, or otherwise, other than from the obligations of Rush, NYC Glass, the Debtor under the Plan, the Confirmation Order and any order(s) of this Court.

### 9.2      Limitation of Liability

The Secured Creditor and the Disbursing Agent, nor any of their respective affiliates, managers, members, nor any of their agents or employees (acting in such capacity), nor any professional person employed by them, shall have or incur any liability to any Entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, prosecution, dissemination, Confirmation, consummation or administration of this Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or the distribution of property under this Plan, or any other action taken or omitted to be taken in connection with the Case or this Plan, except as may be expressly provided for in such agreements or documents, and except for willful misconduct or gross negligence, breach of fiduciary duty, criminal conduct, ultra vires actions or the disclosure of confidential information that causes actual damages.  In addition, any release exculpation or limitation of liability provided for in this Plan shall not release any attorney from any obligations owed under Rule 1.8(h) of the New York Rules of Professional Conduct for malpractice liability.  Nothing in the Plan nor the Confirmation Order shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority, including without limitation any claim arising the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against (i) the Debtor, (ii) any of the Debtor's members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives, and assigns.  In

addition, subject to Sections 524 and 1141 of the Bankruptcy Code, the releases, exculpations, and limitations of liability described herein shall not preclude police, federal tax, or regulatory agencies from fulfilling their statutory duties.

Provisions under this Section shall also extend to Rush, NYC Glass or the Debtor (and its affiliates) only if the Debtor exercises the Payment Option on or before the Termination Date and there is no Termination Event.

### 9.3    Plan and Confirmation Order as Release

The Debtor, its members, and anyone purporting to act or acting on their behalf, shall release and discharge Secured Creditor (or its assignee, designee or nominee), its respective predecessors and successors-in-interest, including all shareholders, assigns, affiliates, partners, officers, directors, from all, any and all actions, causes of action, controversies, liabilities, obligations, rights, suits damages, judgments, claims, and demands whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertible directly or derivatively, existing or hereafter arising, in law, equity, or otherwise, other than from the obligations of Secured Creditor (or its assignee, designee, or nominee) under the Plan, the Confirmation Order and any order(s) of this Court with respect to the Sale of the Property.

Provided the Debtor exercises the Payment Option on or before the Termination Date and there is no Termination Event, the Secured Creditor, and anyone purporting to act or acting on their behalf, shall release and discharge the Debtor, its members (or its assignee, designee or nominee), its respective predecessors and successors-in-interest, including all shareholders, assigns, affiliates, partners, officers, directors, from all, any and all actions, causes of action, controversies, liabilities, obligations, rights, suits damages, judgments, claims, and demands whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertible directly or derivatively, existing or hereafter arising, in law, equity, or otherwise, other than from the obligations of the Debtor, its members (or its assignee, designee, or nominee) under the Plan, the Confirmation Order and any order(s) of this Court with respect to the Sale of the Property.

From and after the Effective Date, a copy of the Confirmation Order and this Plan shall constitute and may be submitted as a complete defense to any claim or liability released pursuant to this Article 9 of this Plan.

Provisions under this Section shall also extend to Rush, NYC Glass or the Debtor (and its affiliates) only if the Debtor exercises the Payment Option on or before the Termination Date and there is no Termination Event.

### 9.4    Revesting of Assets

Consistent with Sections 1123(a)(5)(A) and 1141 of the Bankruptcy Code, and except as may be otherwise provided in this Plan, title to all assets and property of the Estate of the Debtor's not otherwise addressed in this Plan shall pass to, and vest in, the Debtor, free and clear of all Claims, Liens, charges and other rights of creditors arising prior to the Effective Date. On and after the Effective Date, the Post-Confirmation Debtor may conduct its financial affairs and may

use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Court, except as otherwise provided in this Plan or in the Confirmation Order. The Debtor shall be entitled to a discharge only if the Debtor exercises the Payment Option on or before the Termination Date and there is no Termination Event.

## ARTICLE 10

## CONDITIONS TO CONFIRMATION AND THE EFFECTIVE DATE

### 10.1    Conditions for Confirmation

In addition to meeting the requirements of Section 1129 of the Bankruptcy Code, the following conditions shall be conditions to the Confirmation of this Plan: the Confirmation Order is satisfactory to the Secured Creditor in form and substance.

### 10.2    Conditions to the Effective Date

The following shall be conditions to the Effective Date of this Plan. The Secured Creditor may waive a condition by filing a "Notice of Waiver of Condition" with the Bankruptcy Court on the Court's Electronic Court Filing System:

(a) the Confirmation Order, in form and substance satisfactory to the Secured Creditor in their sole discretion, and the Sale Order, in form and substance satisfactory to the Secured Creditor in its discretion, shall have been entered; and

(b) if the Debtor does not exercise the Payment Option and/or if there is a Termination Date, all actions required to be taken to implement the Confirmation Order including the transfer of the Property Causes of Action and title to the Property to the Successful Bidder at the Closing shall have occurred and any contribution necessary to fund the distributions to be made on or about the Effective Date in full shall have been deposited with the Disbursing Agent.

(c) If the Debtor exercises the Payment Option on or before Termination Date and there is no Termination Event, the Effective Date shall be May 31, 2024.

## ARTICLE 11

## MISCELLANEOUS PROVISIONS

### 11.1    Orders in Aid of Consummation

Pursuant to Sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by this Plan.

### 11.2    Compliance with Tax Requirements

In connection with this Plan, the Debtor, the Secured Creditor and the Disbursing Agent, shall comply with all withholding and reporting requirements imposed by federal, state and local

taxing authorities and distributions under this Plan shall be subject to such withholding and reporting requirements; provided, however, that the transfer of any Cash, property or other interest hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under Section 1146 of the Bankruptcy Code.

### 11.3    Due Authorization by Creditors

Each and every Creditor who accepts the distributions provided for under this Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distributions provided for in this Plan and that there are no outstanding Liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by this Plan, or obligations undertaken by such Creditor under this Plan.

### 11.4    Amendments

On notice to all creditors and parties in interest including the United States Trustee, and upon the appropriate opportunity to object, this Plan may be altered, amended or modified by upon mutual consent of the Proponents, in writing and signed by the Proponents, at any time before the substantial consummation of this Plan, as provided in Sections 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019; provided however, that no material modifications of this Plan will be made subsequent to Confirmation absent notice to all creditors and parties in interest including the United States Trustee, and upon the appropriate opportunity to object thereto.

### 11.5    Revocation

The Proponents may revoke or withdraw this Plan at any time prior to entry of the Confirmation Order; provided, however, that the Plan may not be withdrawn once the Property and the Property Causes of Action have been sold pursuant to the Sale.  If this Plan is revoked or withdrawn or if no Confirmation Order is entered, this Plan shall be null and void, and nothing contained in this Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtor; or (ii) prejudice in any manner the rights of the Secured Creditor or any other party in any further proceedings involving the Debtor or its Estate.

### 11.6    Filing of Additional Documents

Except as otherwise provided in this Plan, on or before the Effective Date, the Proponents may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.  The Debtor up to the Effective Date and the Disbursing Agent and/or the Secured Creditor after the Effective Date shall be responsible for filing quarterly post-confirmation status reports using forms in compliance with 28 CFR § 58.8 with the Bankruptcy Court by no later than the 20th day after the conclusion of each calendar quarter.  After the Effective Date, the Disbursing Agent shall pay all quarterly fees required under 28 U.S.C. § 1930 and applicable interest under 31 U.S.C. § 3717, until the earlier of (a) conversion or dismissal of this Chapter 11 Case or (b) entry of a final decree closing this Chapter 11 Case.

### 11.7    Section Headings

The section headings contained in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of this Plan.

### 11.8    Computation of Time

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### 11.9    Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

### 11.10    Notices

All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

> (a)        if to the Debtor, 139-58th St. LLC,139 58th Street, Brooklyn, NY 11220, with a copy to The Law Offices of Charles Wertman, 100 Merrick Road, Suite 304W, Rockville Centre, NY 11570, attn: Charles Wertman, Esq.;

> (b)        if to the Secured Creditor, LCP NPL XI, 2019 LLC, 152 West 57th Street 23rd Floor, New York, NY 10019, Attn: Alan Leavitt with a copy to Kriss & Feuerstein LLP, 360 Lexington Avenue, Suite 1200, New York, New York 10017, Attn: Jerold C. Feuerstein, Esq., Daniel N. Zinman, Esq. and Stuart Kossar, Esq.;

> (c)        if to any Creditor or Interest holder, at: (i) the addresses set forth on the respective Proofs of Claim or Proofs of Interests Filed by such holders; (ii) the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (iii) the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address; and

> (d)        if to any Entity that has filed a notice of appearance, at the addresses set forth on such notice of appearance.

### 11.11    Governing Law

Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

### 11.12    Other Actions

Nothing contained herein shall prevent the Debtor, the Secured Creditor, Interest Holders, or Creditors from taking such actions as may be reasonably necessary to consummate this Plan, although such actions may not specifically be provided for within this Plan.  In accordance with Rule 3022-1 of the Local Bankruptcy Rules for the Eastern District of New York, within fourteen (14) days following the full administration of the Estate, the Secured Creditor will file on notice to the United States Trustee, an application and proposed order for a final decree pursuant to Bankruptcy Rule 3022, without prejudice to the Court's ability to reduce or extend the time to file such application. Secured Creditor shall file a notice of Effective Date with the Court within three (3) business days of the occurrence of the Effective Date.

### 11.13   Severability

In the event any provision of this Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of this Plan.

### 11.14   Business Day

In the event that this Plan requires an act to be performed on a day that is not a Business Day, such act shall be performed on the first Business Day thereafter.

## ARTICLE 12

## RETENTION OF JURISDICTION

### 12.1    Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, until the Case is closed, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

(a) Insure that this Plan and the Sale of the Property and the Property Causes of Action  to the 3d Pty Buyer, or the Successful Bidder is consummated, and to enter any Order pursuant to Section 1142(b) of the Bankruptcy Code, to compel the Debtor and any other necessary party, to take such action and execute such documents to effectuate this Plan;

(b) Consider any modification of this Plan proposed pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019;

(c) Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense, the resolution of any and all objections to the allowance or priority of Claims or Interests, and the resolution of any adversary proceeding;

(d) Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for any period ending on or before the Effective Date;

(e) Resolve any motions pending on the Effective Date to assume, assume and assign or reject any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and if necessary, liquidate, any and all Claims arising therefrom;

(f) Ensure that distributions to holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of this Plan;

(g) Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(h) Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions (including, but not limited to any injunction with respect to Guaranty Claims), and rulings entered in connection with the Case, including, but not limited to any Order necessary to enforce the provisions of Article 7 of this Plan;

(i) Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

(j) Modify this Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code, or to modify the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with this Plan or Disclosure Statement with the consent of the Secured Creditor and any other interested party affected by such modification;

(k) Remedy any defect or omission or reconcile any inconsistency in any Order, this Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with this Plan, to the extent authorized herein or in the Bankruptcy Code;

(l) Issue any injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of this Plan;

(m) Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(n) Determine any dispute arising under or related to this Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by this Plan or the Confirmation Order;

(o) Determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, the Secured Creditor or any contract, instrument, release or other agreement or document created in connection with this Plan or Disclosure Statement; and

(p) Decide or otherwise resolve any and all fee applications of retained Professionals.

(q) Enter an Order or Final Decree concluding the Case.

### 12.2    Post-Closing Jurisdiction

Notwithstanding the entry of a final decree or an Order closing the Case, the Bankruptcy Court shall retain jurisdiction to reopen the Case for the purpose of enforcing, by injunction or otherwise, the terms of this Plan, the Confirmation Order and any final decree, including, without limitation, the enforcement of any rights of the Debtor and the Secured Creditor.

**[THE REMAINDER OF THIS PAGE HAS BEEN LEFT INTENTIONALLY BLANK]**

# ARTICLE 13

## CONFIRMATION REQUEST

### 13.1    Confirmation Request

The Proponents hereby requests Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code.

Dated: New York, New York
      April 1, 2024

**KRISS & FEUERSTEIN LLP**

By:    */s/ Jerold C. Feuerstein*
      Jerold C. Feuerstein, Esq.
      Daniel N. Zinman, Esq.
      Stuart L. Kossar, Esq.
      360 Lexington Avenue, Suite 1200
      New York, New York 10017
      (212) 661-2900

*Attorneys for LCP NPL XI, 2019 LLC*

**LCP NPL XI, 2019 LLC**

By:    */s/ Alan Leavitt*
      Alan Leavitt, Manager

Dated: Rockville Center, New York
      April 1, 2024

**LAW OFFICE OF CHARLES WERTMAN P.C.**

By:    */s/ Charles Wertman*
      Charles Wertman, Esq.
      100 Merrick Road, Suite #304W
      Rockville Centre, New York 11570
      (516) 284-0900

*Attorneys for Debtor*

Dated: Rockville Center, New York
      April 1, 2024

**139-58th ST LLC**

By:    */s/ Janet Rush*
      Janet Rush, President